UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RAMONA BINNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01764-TWP-MJD |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

This matter comes before the Court on Defendant Ocwen Loan Servicing LLC's "Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)," [Dkt. 18], and Defendant Nationstar Mortgage LLC's "Motion to Dismiss." [Dkt. 20.] For the reasons that follow, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendants' motions.

## I.    Background[1]

On January 30, 2008, Ramona Binns ("Plaintiff") signed a mortgage agreement for property located in Indianapolis, Indiana. [Dkt. 1 ¶ 8 (Pl.'s Compl.).] The original lender for the mortgage was Taylor, Bean & Whitaker Mortgage Corp., and the current holder of the promissory note is the Federal Home Loan Mortgage Corporation ("Freddie Mac"). [*Id.* ¶¶ 8-9.] The note holder contracted to have the mortgage agreement serviced by Ocwen Loan Servicing ("Ocwen"). [*Id.* ¶ 11.]

---

[1] The background as set forth below is drawn from the allegations in Plaintiff's complaint, which the Court accepts as true for the purposes of ruling on Defendants' motions to dismiss. *See, e.g., CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014).

In February 2013, Ocwen sent Plaintiff a notification that she was eligible for a Home Affordable Modification. [*Id.* ¶ 12.] The notice stated that if Plaintiff complied with the terms of the modification agreement, then Ocwen would modify her mortgage and waive any prior late charges that Plaintiff had incurred. [*Id.*; *see also* Dkt. 1-3 (Ex. 2 to Pl.'s Compl.).] The agreement required Plaintiff to make three "Trial Payments" of $887.20 on the first day of March, April, and May of 2013. [Dkt. 1 ¶ 13.]

Plaintiff made all three payments at the proper times, and Ocwen cashed each check. [*Id.* ¶¶ 14-16.] On the same day as the last payment—May 1, 2013—Ocwen sent Plaintiff a letter stating that the servicing of her mortgage had been transferred to Nationstar Mortgage, LLC ("Nationstar"). [*Id.* ¶ 17.] At this time, the mortgage was already in default, [*id.* ¶ 86], but Plaintiff believed that, under the terms of the Home Modification Agreement, she could avoid foreclosure by continuing to pay $887.20 each month. [*See, e.g.*, *id.* ¶¶ 20, 26.]

On June 1, 2013, Plaintiff sent her monthly mortgage payment to Nationstar. [*Id.* ¶ 19.] Having completed the trial period and modification agreement, she paid $887.20. [*See id.*] On June 5, however, Nationstar sent Plaintiff a notice stating that she was delinquent in her payments. [*See id.* ¶ 21.] Plaintiff called Nationstar to ask about alleged delinquency, and a Nationstar employee told her that Nationstar had no documentation related to a Home Affordable Modification. [*Id.* ¶ 23.]

On July 3, 2013, Plaintiff faxed a completed copy of the Home Affordable Modification to Nationstar. [*Id.* ¶ 24.] She also submitted her July mortgage payment in the amount of $887.20. [*Id.* ¶ 26.] Three weeks later, Nationstar sent Plaintiff a notice that, as of March 1, 2013, Plaintiff was in default on her mortgage. [*Id.* ¶ 30.] It added that she owed almost $5000, and that foreclosure proceedings could begin within 30 days of the notice. [*Id.*]

On July 30, 2013, Plaintiff called Nationstar and asked about the default notice. [*Id.* ¶ 31] Nationstar again denied that it had received any paperwork related to a Home Modification Agreement. [*Id.*] The next day, Plaintiff faxed another copy of her completed Home Modification Agreement to Nationstar. [*Id.* ¶ 32.] She also sent a completed copy through the mail and submitted her August mortgage payment. Again, she paid $887.20. [*Id.* ¶¶ 32-33.]

On August 5, 2014, Nationstar returned Plaintiff's August payment on the grounds that it was insufficient to bring her account current. [*Id.* ¶ 34.] Over the next two weeks, Plaintiff repeatedly called Nationstar to try to determine whether Nationstar had received the Home Modification Agreement documentation and to ask why Nationstar continued to claim that Plaintiff was delinquent in her payments. [*Id.* ¶¶ 35-38.] Her efforts to resolve the dispute proved unsuccessful, and in September 2014, Nationstar again notified Plaintiff that she had an unpaid balance on her account. [*See id.* ¶ 41.]

This process continued for the next eight months. [*See id.* ¶¶ 42-71.] At one point, Nationstar's employees advised Plaintiff to stop making monthly payments until Nationstar confirmed that the modification agreement was in place. [*Id.* ¶ 50.] Nationstar, however, continued to send delinquency notices, and Plaintiff resumed making her monthly payments for $887.20. [*Id.* ¶ 51.] Ultimately, Plaintiff's efforts to establish that she had completed her Home Modification Agreement were unsuccessful, and in June 2014, Nationstar filed a complaint to foreclose on Plaintiffs' property. [*Id.* ¶ 72.]

On October 29, 2014, Plaintiff filed the current lawsuit against Ocwen and Nationstar. [Dkt. 1.] Plaintiff alleges that her interactions with Defendants caused stress, depression, and weight loss, and that she incurred costs in the form of fuel, postage, and mileage in corresponding with Defendants. [*Id.* ¶¶ 87-88.] Counts I, II, and III of her complaint allege that

Defendant Nationstar violated the Indiana Home Loan Practices Act; committed intrusion upon seclusion; and violated the Fair Debt Collection Practices Act. [*Id.* ¶¶ 93-113.] Counts IV and V[2] allege that Nationstar fraudulently misrepresented the amounts that Plaintiff owed and violated the Indiana Crime Victims Relief Act. [*Id.* ¶¶ 114-126.] Count VI alleges that both defendants— Nationstar and Ocwen—committed intentional infliction of emotional distress. [*Id.* ¶¶ 127-131.] Count VIII[3] alleges that Nationstar violated the Uniform Commercial Code as adopted by statute in Indiana. [*Id.* ¶¶ 132-133.] Counts IX, X, XI, and XII allege that Nationstar and Ocwen were negligent; committed negligent infliction of emotional distress; wrongfully interfered with Plaintiff's contractual relations; and were negligent per se. [*Id.* ¶¶ 134-152.] Finally, Count XIII alleges that Nationstar breached its duty of good faith and fair dealing. [*Id.* ¶¶ 153-159.]

Defendants responded to the complaint by filing the currently pending motions to dismiss. [Dkts. 18 & 20.] Defendant Ocwen seeks dismissal of all claims against it. [*See* Dkt. 18.] Defendant Nationstar seeks dismissal of all counts except the FDCPA violation alleged in Count III. [*See* Dkt. 20.]

In her responses to Defendants' motions, Plaintiff stated that she no longer intends to pursue her negligence per se (Count XII), intrusion upon seclusion (Count II), intentional infliction of emotional distress (Count VI), or negligent infliction of emotional distress (Count X) claims against Nationstar. [Dkt. 36 at 3.] Plaintiff also indicated that she no longer intends to pursue her intentional infliction of emotional distress (Count VI) or negligent infliction of emotional distress (Count X) claims against Ocwen. [Dkt. 35 at 2.] The Magistrate Judge thus recommends that Count II, Count VI, and Count X be **DISMISSED WITH PREJUDICE** in

---

[2] Plaintiff's complaint contains three separate counts labelled "Count IV." [*See* Dkt. 1 ¶¶ 107-131.] These counts allege fraudulent misrepresentation, violation of the Indiana Crime Victims Relief Act, and intentional infliction of emotional distress. [*Id.*] The Court will refer to these counts as Count IV, Count V, and Count VI, respectively.
[3] The complaint contains no Count VII. [*See* Dkt. 1.]

their entirety, and that Count XII be **DISMISSED WITH PREJUDICE** with respect to Nationstar.

## II.    Discussion

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must 'state a claim to relief that is plausible on its face.'" *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must thus contain "either direct or inferential allegations respecting all the material elements necessary to sustain recovery" under the relevant legal theory. *See Twombly*, 550 U.S. at 562. Pleading only "labels and conclusions" or only "a formulaic recitation of the elements of a cause of action" will not suffice, nor will pleading facts that are "merely consistent" with a defendant's liability. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555, 557)).

In applying these principles, a court construes the complaint in the light most favorable to the plaintiff. *Yeftich*, 722 F.3d 911, 915. The court accepts all well-pleaded facts as true and draws all reasonable inference in favor of the plaintiff, but the court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.* The court may also consider any exhibits attached to a plaintiff's complaint, *see, e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012), and in this case, Plaintiff has attached numerous exhibits documenting her mortgage and her interactions with Defendants. [Dkt. 1-1 through Dkt. 1-38.] The Court will thus consult these documents as necessary in considering the remaining counts of Plaintiff's complaint.

Finally, a plaintiff facing a Rule 12(b)(6) motion may ordinarily re-plead any claims that are dismissed. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013), *reh'g denied* (Feb. 20, 2013). When, however, "it is clear that any amendment would be futile," such "[l]eave to amend need not be granted," and the claim may be dismissed with prejudice. *See id.*

### A.  Economic Loss Rule and Indiana Tort Liability

Several of Plaintiff's remaining claims assert that Defendants committed various torts.[4] Nationstar responds that Indiana's "economic loss rule" bars any liability for such claims. [Dkt. 21 at 9.] This doctrine "provides that a defendant is not liable under a tort theory for any purely economic loss caused by its negligence[.]" *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010). A plaintiff suffers "purely economy loss" when he suffers only "pecuniary loss unaccompanied by any property damage or personal injury." *Id.* at 730. Thus, as a general rule, a plaintiff who suffers no property damage or personal injury cannot recover in tort. *Id.*

This rule has several limitations. *Id.* First, it applies only where the plaintiff has suffered "*purely* economic loss." *Id.* (emphasis original). Thus, any sort of property damage or personal injury distinct from economic loss precludes application of the rule. *See id.* Second, the rule does not apply even in certain situations where a plaintiff *has* suffered exclusively economic loss. Possible exceptions include "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." *Id.* at 742. In such situations, a plaintiff may be able to recover in tort even if he or she has suffered only economic loss. *See id.*

---

[4] These claims are those for fraudulent misrepresentation (against Nationstar), negligence (against both Defendants), wrongful interference with contractual relations (against both Defendants), negligence per se (against Ocwen), and breach of the duty of good faith and fair dealing (against Nationstar).

In this case, Nationstar argues that Plaintiff has suffered purely economic loss, such that she cannot recover for any of her tort claims against Defendants. [Dkt. 21 at 10.] Nationstar notes that Plaintiff has alleged only that she incurred costs in dealing with Defendants, and that she suffered from "emotional stress and a resulting loss of weight." [*Id.*] Such harm, according to Nationstar, is insufficient to establish the sort of "property damage" or "personal injury" that would constitute more than merely economic harm, and the economic loss rule therefore bars Plaintiff's recovery. [*See id.*]

Defendant responds that the economic loss rule in this case is inapplicable for two reasons. First, she argues that her losses in this case were not purely economic in that she suffered depression and weight loss that constitute "personal injury." [Dkt. 36 at 3.] Second, she argues that even if she has not suffered "personal injury," certain counts in her complaint fall within the exceptions to the economic loss rule identified above. [*Id.* at 5.]

### 1. Personal Injury

Plaintiff's complaint alleges that she "has incurred and suffered through significant emotional distress as a result of Nationstar's wrongful collection actions and foreclosure lawsuit." [Dkt 1. ¶ 87.] She contends that she "is currently fighting with debilitating depression and severe weight loss as a direct result of Defendant's actions," and that she has "acquired medical assistance to tackle the aforementioned health problems." [*Id.*]

Nationstar argues that this does not amount to "personal injury" for purposes of the economic loss rule. It cites *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 938 (Ind. Ct. App. 1996), for the proposition that "when there is no accident and no physical harm," there is no personal injury. [Dkt. 21 at 10.] Nationstar adds that the court in *Bamberger* defined physical harm as "bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property," and it contends that

Plaintiff's depression and weight loss do not fall within this definition. [*Id.* (citing *Bamberger*, 665 N.E.2d at 936).]

This passage from *Bamberger*, however, does not establish the outer bounds of what may constitute a "personal injury." In *Bamberger*, the plaintiffs' building suffered a power outage and they sued a utility company 1) under Indiana's Products Liability statute and 2) under a general theory of negligence. 665 N.E.2d at 936-38. The court drew its definition of "physical harm" in that case from the Indiana Products Liability Statute. *Id.* at 936. It then noted that the plaintiffs' only alleged harm was that they had been damaged because they had been deprived of the use of their building. *Id.* at 938. They did "not allege actual physical harm to persons or property," such that they had in fact suffered only economic losses. *Id.* The court, that is, refused to recognize harm to the plaintiffs' "intangible property interest" as the sort of physical harm or personal injury that could overcome the economic loss rule. *Id.* at 939.

Plaintiff's claims in this case are quite different: she is not suing under the Indiana Products Liability statute, making that statute's definitions inapplicable to her claims, and she does not allege harm to an "intangible" interest; rather, she alleges that her body itself has been affected by Defendants' conduct, and that it has been affected to such a degree that she has sought medical treatment. [*See* Dkt. 1 ¶ 87.] This goes well beyond the claimed damage to the "intangible" interest that was insufficient to defeat the economic loss rule in *Bamberger*.

Nationstar also cites *Stender v. BAC Home Loans Servicing LP*, No. 2:12 CV 41, 2013 WL 832416, at *4 (N.D. Ind. Mar. 6, 2013), as support for application of the economic loss rule. [Dkt. 21 at 10.] As with *Bamberger*, however, *Stender* is distinguishable from the current case. In *Stender*, the plaintiffs alleged that they had suffered losses that were "not purely economic, because in addition to pecuniary losses, they also suffered injuries to their credit score and

reputations." 2013 WL 832416, at *4. The court cited *Bamberger* and rejected this argument. *Id.* It noted that Indiana law "reject[s] the concept of intangible harm as justifying recovery through a claim of negligence," and it found that harm to a reputation or credit score amounted to such intangible harm. *Id.*

Again, Plaintiff's alleged harm in this case is more than merely intangible. It is not her reputation or her credit score or any other intangible interest that has been affected; instead, it is her *body itself.* [*See* Dkt. 1 ¶ 87.] She claims to be *physically* different than she was before her interactions with Defendants, and the change has been so detrimental that she has sought medical treatment. She has thus gone well beyond the allegations in *Bamberger* and *Stender* and *has* stated that she was physically injured by Nationstar's conduct.

This conclusion is also consistent with the theory of the economic loss rule. "At the heart of the question of whether economic damages can be recovered under a negligence theory is the basic distinction between the theories of tort and contract law. Negligence theory protects interests related to safety or freedom from physical harm." *Bamberger*, 665 N.E.2d 933, 938 (citation omitted). Contract law, in contrast, protects "commercial parties' freedom to allocate economic risk." *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 304 (Ind. Ct. App. 2010). Thus, "contract is the sole remedy for the failure of a product or service to perform as expected." *Id.*

Here, Plaintiff's allegations directly address the concerns of tort law: As indicated by her pursuit of medical assistance, Plaintiff currently fears for her physical health and safety. [*See* Dkt. 1 ¶ 87.] Her harms thus go beyond merely economic harms. She is not suing only because Nationstar and Ocwen did not "perform as expected;" rather, she has suffered physical distress above and beyond her economic loss, such that seeking recovery in tort is appropriate. *See*

*Bamberger*, 665 N.E.2d at 938; *accord Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 173-74 (Ind. 2003) ("To the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available."). The economic loss rule therefore does not bar Plaintiff's claims.

### 2. Exceptions to the Economic Loss Rule

Plaintiff next contends that even if she had suffered purely economic loss, the economic loss rule would not bar her claims because they fall within certain exceptions to the rule. The Court need not evaluate this argument because, as described above, Plaintiff has alleged that she suffered physical injury that goes beyond merely economic loss. In addition, the exceptions on which Plaintiff relies are not especially well-defined. In *Marion County Public Library*, for instance, the Indiana Supreme Court did acknowledge that exceptions to the economic loss rule may exist in cases such as "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement," 929 N.E.2d at 736, but the court did so in dicta "for purposes of illustration only." *Id.*

Also, other Indiana cases that recognize exceptions to the economic loss rule are somewhat fact-dependent. In *U.S. Bank, N.A. v. Integrity Land Title Corp.*, for instance, the Indiana Supreme Court suggested that an exception to the economic loss rule is appropriate for "a claim for negligent misrepresentation" in "the context of the title insurance industry." 929 N.E.2d 742, 748 (Ind. 2010). In then reviewed various factors that supported "finding a duty in tort on these facts." *Id.* at 750. The case currently before the Court does not involve the title insurance industry, such that Plaintiff's argument on the basis of *U.S. Bank*, [*see* Dkt. 36 at 6], is somewhat tenuous. The Court will thus rely on Plaintiff's allegations of personal injury to

conclude that the economic loss rule does not apply to Plaintiff's claims, and the Court now addresses the individual counts in Plaintiff's complaint.

## B. Count I: Indiana Home Loan Practices Act

Count I alleges that Defendant Nationstar violated the Indiana Home Loan Practices Act ("IHLPA") [Dkt. 1-1 ¶¶ 96-100.] This act provides in relevant part that a person may not "[e]ngage in a deceptive act in connection with a mortgage transaction[5]." Ind. Code Ann. § 24-9-3-7(c). A "deceptive act" is "an act . . . in which a person at the time of the transaction knowingly or intentionally: (A) makes a material misrepresentation; or (B) conceals material information regarding the terms or conditions of the transaction." Ind. Code § 24-9-2-7(a). "Knowingly" means "having actual knowledge at the time of the transaction." *Id.* § 24-9-2-7(c).

Defendant argues that Plaintiff did "not allege any facts . . . that suggest Nationstar knowingly or intentionally made any material misrepresentations to her about her loan." [Dkt. 21 at 19.] Plaintiff's complaint, however, contains numerous allegations that Nationstar sent her notices that misrepresented the amount of her monthly payment. [*See, e.g.*, Dkt. 1 ¶¶ 29, 40, 53, 63.] If, as Plaintiff alleges, these notices did not accurately state the amount that was due, then they were potentially actionable misrepresentations. *Cf. Collins v. America's Servicing Co.*, 652 F.3d 711, 715 (7th Cir. 2011) (no liability under IHLPA when statements accurately reflected contract between parties).

---

[5] The term "mortgage transaction" includes mortgages such as those that Plaintiff originally entered into with Taylor, Bean & Whitaker Mortgage Corp. *See* Ind. Code § 24-9-3-7(a). There appears to be little Indiana case law defining the scope of acts taken "in connection with" such a transaction, but the Court finds it plausible to infer that the phrase "in connection with a mortgage transaction" would include the servicing *of* that mortgage transaction. In any event, Nationstar has not argued that its actions were *not* taken "in connection with a mortgage transaction." [*See* Dkt. 21 at 18-19; Dkt. 40 at 13.] Nationstar may raise that argument later, but the Court need not consider it at this stage. *See, e.g.*, *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 775 (N.D. Ill. 2005) ("It is not this Court's job to make parties' arguments for them, and it will not do so in this case."); *Terpening v. Brett*, 222 F. Supp. 2d 1135, 1138 n.2 (C.D. Ill. 2002) (granting 12(b)(6) motion after noting "[plaintiff] has not tendered this argument, and the Court is not required to make his arguments for him").

Next, Defendant argues that any misrepresentations were not "knowingly" made because Plaintiff's own allegations indicate that Ocwen never notified Nationstar about the Home Affordable Modification. [Dkt. 21 at 19.] Defendant is correct about this allegation, [*see* Dkt. 1 ¶ 90 ("Ocwen intentionally or with reckless ignorance failed to notify Nationstar of the Loan Modification Agreement.")], but Defendant fails to acknowledge that Plaintiff *also* alleges that she later informed Nationstar about the Home Modification Agreement; in fact, she did so on multiple occasions by telephone, by mail, and by facsimile. [*See* Dkt. 1 ¶¶ 23-24, 31-32, 38.] Thus, regardless of whether Ocwen failed to notify Nationstar, Plaintiff's communications were sufficient to give Nationstar actual knowledge of the Home Affordable Modification. Plaintiff has therefore alleged facts sufficient to support her claims that Nationstar's misrepresentations about the amount due were knowingly made, *see* Ind. Code § 24-9-2-7(c), such that Plaintiff has adequately pled her claim for a violation of the IHLPA. The Magistrate Judge therefore recommends that Nationstar's motion to dismiss this claim be **DENIED**.

### C. Count IV: Fraudulent Misrepresentation

Count IV alleges that Nationstar fraudulently misrepresented the amounts due under Plaintiff's mortgage. [Dkt. 1 ¶¶ 114-120.] Under Rule 9(b), a plaintiff must "state with particularity" the circumstances giving rise to the defendant's fraud. Fed. R. Civ. P. 9(b); *see also DeSimone v. Quicken Loans, Inc.*, No. 1:09-CV-01421-WTL-MJD, 2011 WL 2470661, at *5 (S.D. Ind. June 20, 2011) (applying Rule 9(b) to fraudulent misrepresentation claim under state law). Plaintiff must thus do more than state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Instead, she must state the "who, what, when, where, and how" of the fraud. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011)

Fraudulent misrepresentation in Indiana requires that a plaintiff show a material misrepresentation of past or existing fact that was made with knowledge or reckless ignorance of its falsity; that was relied upon by the plaintiff; and that proximately caused the plaintiff's injury. *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012). Plaintiff recites these elements in Count IV, [Dkt. 1 ¶¶ 114-120], and Plaintiff argues that several statements identified in the factual background of the complaint support these allegations.

Plaintiff first notes that after her mortgage service was transferred to Nationstar, she "started receiving notices from Nationstar showing a past due arrearage in complete disregard of the Loan Modification Agreement." [Dkt. 36 at 8; *see also* Dkt. 1 ¶¶ 29, 30, 34, 39, 40, 47, 60.] As noted above, these notices were potentially false because they showed a different amount due than would have been due under the terms of the Home Affordable Modification. Even if the notices were incorrect, however, Plaintiff has not explained how she relied on them: indeed, rather than pay the amount due in the notices, Plaintiff continued to pay only the amount she believed to be due under the terms of the Home Modification Agreement. [*See, e.g.*, Dkt. 1 ¶¶ 26, 33, 41, 54, 58, 61, 64, 67.] Because Plaintiff did not rely on these statements, they cannot form the basis of a fraudulent misrepresentation claim. *See Reid*, 980 N.E.2d at 292.

Plaintiff also notes that in October 2013 she called Nationstar to ask about the status of her Home Affordable Modification. [Dkt. 1 ¶ 49-50.] An employee told her that Nationstar would send her "some paperwork" to confirm her agreement and advised her that her first payment would be due in December 2013. [*Id.*] Based on this advice, Plaintiff did not make her October or November 2013 payments. [Dkt. 50.] Plaintiff then claims that Nationstar nonetheless added the amount of the October and November payments to her unpaid balance, and that this "resulted in a foreclosure lawsuit against Ms. Binns." [Dkt. 36 at 9.]

The complaint's allegations do not support this argument: Months before the missed payments, Nationstar warned Plaintiff that foreclosure proceedings were possible because she was already in default. [Dkt. 1 ¶ 17.] In addition, Plaintiff herself acknowledges that the notices from Nationstar indicated that her unpaid balance was "far more than the total of the two missed payments." [Dkt. 36 at 9 n.8 (citing Dkt. 1 ¶¶ 60, 62, 63, 65, 66, 68, 69).] It is thus implausible that the two missed payments themselves caused the foreclosure action, such that Plaintiff has not adequately pled the element of causation with respect to Nationstar's statements with regard to these payments. *See Reid*, 980 N.E.2d at 292 (requiring proximate causation).

Plaintiff finally argues that Nationstar made numerous false statements when its employees said they would investigate the status of her modification and try to resolve the issue. [Dkt. 36 at 9-10.] She specifically contends that Nationstar "falsely (1) promised to investigate and resolve the dispute; and, (2) promised to send the 'paperwork' necessary to upload the modification to Nationstar's system." [*Id.* at 10.]

These statements are not a basis for a fraudulent misrepresentation claim. As noted above, the statements for such a claim must relate to "*past* or *existing facts*." *Reid*, 980 N.E.2d at 292 (emphasis added). Thus, liability for fraud does "not [arise] from representations as to future action or future conduct. It cannot be based on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Kopis v. Savage*, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986).

Plaintiff in this case has presented precisely such "broken promises" and "unfulfilled predictions." She cites many representations that were allegedly false, [Dkt. 8-9], but each of them is merely a promise about future conduct. [*See, e.g.*, Dkt. 1 ¶ 36 ("'Trey' indicated that he would review the file and asked Ms. Binns to call again in a week."); ¶ 43 ("Ms. Binns was told

by 'Stephanie' that she would get a call back from the manager on the same day."); ¶ 52 ("'Janice' promised that she will send an email to a manager to inquire about the status of this 'paperwork' and will call Ms. Binns back on the following Tuesday.").] Such statements do not give rise to actionable fraud, *see Kopis*, N.E.2d at 1272, such that Plaintiff has not adequately pled the necessary elements of this claim. The Magistrate Judge thus recommends that Nationstar's motion to dismiss this count be **GRANTED**.

Next, a dismissal under Rule 9(b) is typically without prejudice. *See, e.g.*, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 n.4 (7th Cir. 1994) ("Rule 9(b) infirmities do not usually result in dismissal with prejudice."); *Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 180-81 (N.D. Ill. 2013) ("Plaintiffs are granted leave to amend and reinstate their claims, provided they are able to plead their claims with sufficient specificity to meet the heightened pleading standard for fraud claims imposed by Rule 9(b)."). In this case, however, Plaintiff has not failed to plead her claim "with sufficient specificity." *Ritacca*, 291 F.R.D. at 180. To the contrary, Plaintiff has provided numerous statements from specific employees on specific dates. [*See, e.g.*, Dkt. 1 ¶ 36, 43, 52.] The problem, however, is that these statements are not actionable, either because Plaintiff did not rely on them in a way that caused damages or because the statements were merely promises that, as a matter of law, cannot constitute fraud. Plaintiff cannot repair these infirmities simply by adding more specificity, and it would therefore be fruitless to allow her to re-plead this count. As a result, the Magistrate Judge recommends that the Court dismiss Plaintiff's fraudulent misrepresentation count with prejudice.

### D.  Count V: Violation of the Indiana Crime Victims Relief Act

The Indiana Crime Victims Relief Act ("CVRA") provides that "[i]f a person . . . suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss[.]" Ind. Code § 34-24-

3-1. To recover under the act, a plaintiff "must prove all the elements of the criminal act." *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012). Thus, to survive a motion to dismiss, Plaintiff must adequately plead all elements of the underlying criminal act. *See Twombly*, 550 U.S. at 562 (requiring "direct or inferential allegations respecting all the material elements necessary to sustain recovery").

In this case, Plaintiff first contends that Nationstar violated Section 35-43-5-3 of the Indiana Code. [Dkt. 1 ¶ 124.] That section states that a person "commits deception" when he "knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity." Ind. Code § 35-43-5-3(a)(2). Here, Plaintiff specifically alleges that "Nationstar, knowingly or intentionally made a false or misleading written statement with intent to obtain property," [Dkt. 1 ¶ 124], but Defendant asserts that Plaintiff provided no factual details to support this allegation. [Dkt. 21 at 20.]

Defendant's argument overlooks the factual background set out in the complaint. Plaintiff alleges that Nationstar received notice of the Home Affordable Modification on numerous occasions, [*see, e.g.*, Dkt. 1 ¶¶ 24, 31, 38], but that Nationstar continued to send notices stating that Plaintiff owed an amount that was higher than the amount owed under the terms of the modification. [*See, e.g.*, *id.* ¶¶ 29, 40, 48.] Accepting these allegations as true, it is reasonable to infer that Nationstar knew that Plaintiff did not owe the amount it asserted and yet continued to send her written statements with the intent to induce her to pay this amount. This addresses all elements of the statutory definition of "deception," *see* Ind. Code § 35-43-5-3(a)(2), such that Plaintiff has adequately pled that Nationstar committed deception.

Plaintiff also contends that Nationstar violated Section 35-43-1-2 of the Indiana Code. [Dkt. 1 ¶ 124.] Until June 30, 2014, that section provided that a person commits "criminal

mischief" when he "knowingly or intentionally causes another to suffer pecuniary loss by deception or by an expression of intention to injure another person or to damage the property or to impair the rights of another person." Ind. Code Ann. § 35-43-1-2(a)(2) (2014).[6] As described above, Plaintiff has adequately alleged that Defendant committed deception. In addition, Plaintiff alleges that she suffered pecuniary loss in the form of postage costs, the cost of mileage, and the cost of gasoline in her dealings with Nationstar. [Dkt. 1 ¶ 126.] She has therefore pled that she suffered "pecuniary loss by deception," Ind. Code § 35-43-5-3(a)(2), and her allegations are sufficient to survive Defendant's motion to dismiss.

Nationstar argues in reply that this conclusion is erroneous because many of the allegations in Plaintiff's complaint relate to future promises made by Nationstar employees. [Dkt. 40 at 13-14; *see also, e.g.*, Dkt. 1 ¶ 36 ("'Trey' indicated that he would review the file[.]"); *id.* ¶ 52 ("'Janice' promised that she will send an email to a manager[.]").] Defendant contends that such "[o]ffers of assistance—even if they are not followed through on—are, quite simply, not criminal acts." [Dkt. 40 at 13.] Defendant may be correct, but, as noted above, the allegation of deception does not rest on any promise from Nationstar's employees; instead, it rests on the allegedly false written notices that Nationstar sent to Plaintiff each month. As a result, Nationstar's argument on this point is irrelevant, and the Magistrate Judge recommends that Nationstar's motion to dismiss Count V be **DENIED**.

### E. Count VIII: Violation of the Uniform Commercial Code

---

[6] The current version of Indiana Code Section 35-43-1-2 became effective on July 1, 2014 and does not contain any language related to deception. Nationstar's conduct, however, occurred in late 2013 and early 2014, and the Court thus looks to the version of the statute in effect at that time. *See, e.g.*, *N.S. v. State*, No. 49A05-1407-JV-338, 2015 WL 384161 (Ind. Ct. App. Jan. 28, 2015) ("We refer to the version of the statute in effect at the time of [defendant's] alleged conduct.").

Plaintiff alleges that Nationstar violated the Uniform Commercial Code as adopted by state law in Indiana Code Section 26-1-3.1-603. [Dkt. 1 ¶ 133.] This section provides in relevant part that "[i]f tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged." Ind. Code § 26-1-3.1-603(c). Plaintiff alleges that she timely tendered payments of $887.20 for August 2013, October 2013, May 2014, and June 2014, but that the payments were returned to her. [Dkt. 1 ¶ 133; *see also id.* ¶¶ 33-34, 44-45, 70-71.] She thus contends that she is entitled to recover any interest that was charged for these wrongfully rejected payments. [Dkt. 36 at 28.]

Defendant argues that Plaintiff is not entitled to such relief because the amount she tendered was not the "amount due." [Dkt. 21 at 21; Dkt. 40 at 17.] Defendant notes that the notices sent to Plaintiff indicated that she owed *more* than $887.20, such that her tender of this amount was not sufficient to suspend the obligation of this payment. [*See, e.g.*, Dkt. 1 ¶ 69 (indicating total payable amount of $919.87).]

Defendant is correct that, as a general rule, a tender must be for the full amount of the debt in order to suspend accrual of interest. *See, e.g.*, *4-D Bldgs., Inc. v. Palmore*, 688 N.E.2d 918, 920 (Ind. Ct. App. 1997) (citing Ind. Code 26-1-3.1-603(c)) ("It is well-settled that a proper tender will serve to discharge the obligation to pay additional interest. A proper tender generally requires full payment of a debt due[.]"). In this case, however, Plaintiff alleges that she *did* pay the full amount: the gist of her complaint is that Nationstar was consistently wrong about the amount that was actually due, such that even if Plaintiff was not paying the full amount Nationstar *requested*, she *was* paying the full amount that was *actually due*. [*See, e.g.*, Dkt. 1 ¶¶ 26, 33, 41, 44, 54 (noting that each payment of $887.20 was made "pursuant to the terms of the

Home Affordable Mortgage Modification.").] If Plaintiff's allegations are true—and the Court must accept them as true[7]—then Plaintiff's tenders were proper, and she has thus stated a plausible claim for relief under Ind. Code 26-1-3.1-603(c). The Magistrate Judge accordingly recommends that Nationstar's motion to dismiss this count of Plaintiff's complaint be **DENIED**.

### F. Count IX: Negligence

Plaintiff next asserts negligence claims against both Nationstar and Ocwen. [Dkt. 1 ¶¶ 134-37.] Under Indiana law, "a defendant is liable to a plaintiff for the tort of negligence if (1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach." *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726.

Defendants in this case maintain that Plaintiff has "recited the mere elements of her negligence claim." [Dkt. 19 at 5; *see also* Dkt. 21 at 14-15.] They note that Paragraphs 134 through 137 of Plaintiff's complaint state only that Defendants "owed a duty to the Plaintiff," that Defendants "breached their aforementioned duty," and that "Plaintiff incurred damages as a direct and proximate cause of Defendants' breach." [Dkt. 1 ¶¶ 134-37.] They therefore conclude that Plaintiff has not specified the circumstances giving rise to a duty or the way in which that duty was breached. [Dkt. 19 at 5; Dkt. 21 at 14-15.]

---

[7] Defendant suggests that the Court need not accept that $887.20 was the proper amount due because the Home Affordable Modification Agreement indicates that "escrow payments may be adjusted periodically in accordance with applicable law and therefore [Plaintiff's] total monthly payment may change accordingly." [Dkt. 1-3 at 3.] Defendant, however, provided no explanation regarding how Plaintiff's monthly payments actually *did* change, [*see* Dkt. 40 at 17], and Ocwen's acceptance of Plaintiff's payments for this amount suggest that $887.20 was indeed the correct amount. [*See* Dkt. 1 ¶¶ 14-16.] It thus remains reasonable to accept Plaintiff's allegations that the payments were supposed to be $887.20. Put differently, unsupported speculation about how Plaintiff's monthly payments "may" have changed is not enough to render Plaintiff's claim "[im]plausible on its face," and thus is not enough to dismiss plaintiff's claim. *See Twombly*, 550 U.S. at 570.

In response, Plaintiff points to the factual background set out in her complaint. [*See* Dkt. 35 at 4; Dkt. 36 at 21.] She alleges that "Ocwen was contracted as a Mortgage Servicer by Freddie Mac and/or prior Promissory Note Holders to service the Mortgage Account," [Dkt. 1 ¶ 11], and that the mortgage servicing was later "transferred to Nationstar Mortgage." [*Id.* ¶ 17; *see also* Dkt. 1-5 (Ex. 4 to Pl.'s Compl.) (documenting assignment of servicing contract).] Both Defendants therefore had contracts with Freddie Mac. Plaintiff then argues that these contractual relationships created a duty on Defendants' part to perform their contractual obligations with "care, skill, and faithfulness." [*See* Dkt. 35 at 4; Dkt 36 at 20-21.] Finally, she contends that the confusion about her Home Affordable Modification indicates that Defendants did not exhibit such care, and that their failure to do so constitutes a tort against Plaintiff. [*See* Dkt. 35 at 4; Dkt 36 at 20-21.]

This argument is problematic for two reasons. First, even assuming that failure to perform a contract can support a claim for negligence, Plaintiff has not explained why Defendants' alleged failures to perform their contracts with *Freddie Mac* give rise to a cause of action for *Plaintiff*. The general rule, after all, is that "only those who are parties to a contract, or those in privity with a party, have the right to recover under a contract." *Flaherty & Collins, Inc. v. BBR-Vision I, L.P.*, 990 N.E.2d 958, 971 (Ind. Ct. App.), *transfer denied*, 996 N.E.2d 1278 (Ind. 2013).[8] By analogy to this rule, Plaintiff would have had to be a party to the contract at issue to assert a claim based on failure to fulfill the contract's obligations. Here, however,

---

[8] An exception to this rule naturally arises in the case of third-party beneficiaries. *See, e.g.*, *Flaherty & Collins*, 990 N.E.2d at 971 ("[A]n entity that is not a party to the contract may enforce the provisions of the contract by demonstrating that it is a third-party beneficiary thereto."). In this case, however, Plaintiff has not made such an argument, [*see* Dkt 35 at 3-6; 36 at 20-24], nor has she alleged the specific elements required to establish third-party beneficiary status. [*See* Dkt 1; *Flaherty & Collins*, 990 N.E.2d at 971 (setting out requirements for third party to contract to recover).]

Plaintiff was not involved in the contracts between Freddie Mac, Ocwen, and Nationstar,[9] and these contractual relationships thus do not create a duty of care with respect to Plaintiff.

Second, even if Plaintiff *had* somehow established a contractual relationship with Defendants, she has not alleged conduct that would give rise to a tort claim. As an initial matter, Plaintiff is correct that some Indiana courts have recognized that negligent performance of a contract may, in some instances, be grounds for a tort claim. *See, e.g.*, *Crum v. AVCO Fin. Servs. of Indianapolis, Inc.*, 552 N.E.2d 823, 827 (Ind. Ct. App. 1990) (noting that "one who undertakes by contract to perform a service . . . owes a general duty to perform the service with reasonable care," and that the "negligent performance of a contract may give rise to liability in tort"); *Orkin Exterminating Co. v. Walters*, 466 N.E.2d 55, 58 (Ind. Ct. App. 1984), *abrogated on other grounds by Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998) ("Indiana law recognizes that [a plaintiff has] an option of suing in tort or in contract for the negligent performance of a contractual duty.").

Other cases, however, indicate that a tort claim is not available when a defendant merely fails to fulfill his obligations under a contract. In *Wells v. Stone City Bank*, for instance, the plaintiff brought a tort claim against the defendant bank, but the court of appeals found that the claim was more properly characterized as a breach of contract claim. 691 N.E.2d 1246, 1249 (Ind. Ct. App. 1998). It noted that the plaintiff did "not appear to allege any duty that was owed to him outside of that duty arising out of his contractual relationship with the Bank, and he

---

[9] Certain language in the Home Affordable Modification that Plaintiff signed with Ocwen could suggest that Plaintiff had a contract with Ocwen. [*See, e.g.*, Dkt. 1-3 at 6 ("[T]he Servicer and [Plaintiff] have executed this Agreement.").] As Plaintiff's briefs indicate, however, the modification agreement existed not between Ms. Binns and Ocwen, but "between Ms. Binns and Freddie Mac." [Dkt. 36 at 31; *see also* Dkt. 35 at 7 ("Ms. Binns did not directly have an agreement with Ocwen[.]"). In executing the modification, it thus seems that Ocwen was acting as Freddie Mac's agent, in which case Ocwen would not itself have a contractual relationship with Plaintiff. *See, e.g.*, *Boesch v. Marilyn M. Jones & Associates*, 712 N.E.2d 1061, 1062 (Ind. Ct. App. 1999). As for Nationstar, Plaintiff never executed any sort of written agreement with that entity, and she specifically noted that she "did not directly have an agreement with Nationstar." [Dkt. 36 at 26.]

[alleged] no breach of that duty other than the Bank's failure to perform the contracted-for service." *Id.* The proper action was therefore one for breach of contract. *See id.* Further, in *Orkin Exterminating Co.*, *supra*, the court noted that the parties to a contract can sometimes pursue a tort claim, but the court still limited the plaintiff in that case to suing for breach of contract. 466 N.E.2d at 58-59. It observed that the only alleged breach was "based on the contract" between the parties, such that even if the plaintiff called his claim a tort action, the claim in actuality was still a breach of contract action. *Id.*

This Court has previously addressed these seemingly conflicting precedents. In *Sheridan Health Care Center, Inc. v. Centennial Healthcare Corp.*, Judge McKinney acknowledged that some Indiana authority indicates that "breach of a contract duty could form the basis of a breach of duty in tort," but the Court nonetheless concluded "that an allegation that a party to a contract negligently performed the contract duty is a claim for breach of contract." No. IP01-0186CMS, 2001 WL 1029111, at *7-8 (S.D. Ind. June 19, 2001). The Court observed that Indiana had previously recognized that "[a]bsent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and *the written contract defines the full extent of their rights and duties*." *Id.* at *8 (emphasis added) (quoting *Orkin Exterminating Co.*, 466 N.E.2d at 59). Any allegation that a party had not fulfilled those duties was thus "a breach [of contract], not an independent tort that arises from the relationship between the parties." *Id.* Moreover, the Court noted that Indiana "supports the concept of freedom of contract; in other words, enforcement of the contract as written, rather than unnecessary interference." *Id.* (citing *Harrison v. Thomas*, 744 N.E.2d 977, 980 (Ind. Ct. App. 2001)). The Court therefore refused to recognize a tort claim that could interfere with the written expectations of the parties; instead, it

concluded that "when a contract defines the duties between the parties, an allegation that a party failed to perform pursuant to the contract is a breach of contract, not a tort." *Id.*

The Seventh Circuit has taken a similar approach to Indiana law. In *Rexnord Corp. v. DeWolff Boberg & Associates, Inc.*, the court recognized that Indiana law does sometimes allow for a tort claim based on negligence in the course of the performance of a contract. 286 F.3d 1001, 1005 (7th Cir. 2002) (citing *Crum*, 552 N.E.2d at 827)). Nonetheless, no tort remedy is available when the only alleged negligence is failure to comply with a term of the contract. In such circumstances—that is, "when a standard of care is specified in the contract"—this standard "supersedes the tort standard . . . and the promisee's remedy is limited to a suit for breach of contract." *Id.* (citing *Stone City Bank*, 691 N.E.2d at 1249).

Finally, the Indiana Court of Appeal's recent decision in *Jaffri v. JPMorgan Chase Bank, N.A.*, No. 32A01-1405-MF-236, 2015 WL 630434, at *2 (Ind. Ct. App. Feb. 13, 2015), is consistent with this approach. There, the court stated that "a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, *but not otherwise*." *Id.* (emphasis added) (quotation omitted). Thus, "[u]nless there is evidence of an independent tort that would have existed if there was no contract between the parties, they should not be permitted to expand that breach of contract into a tort claim against either the principal or its agents by claiming negligence as the basis of the breach." *Id.* (internal quotation marks omitted).

Together, these cases indicate that a plaintiff can bring a negligence action against a defendant with whom the plaintiff has a contractual relationship, but **only** if the allegedly negligent conduct was separate and distinct from any of the defendant's obligations under the contract. The alleged negligence, that is, must be more than a mere "failure to comply with [an]

express term[] of the contract," *Rexnord*, 286 F.3d 1001, and it must be "independent" of the contract. *Jaffri*, 2015 WL 630434, at *2; *see also Sheridan Health Care*, 2001 WL 1029111, at *8 (imposing liability only for "an independent tort").

In this case, Plaintiff has not indicated that Defendants engaged in tortious conduct independent of their contractual obligations. Her briefs in response to Defendants' motions specifically argue that "Defendant[s] breached [their] duty to observe their contractual duties with care, skill, and faithfulness." [Dkt. 35 at 4; Dkt. 36 36 at 22.] Thus, Plaintiffs' own assertions indicate that her negligence claim is expressly based on Defendants' *contractual* duties. This is not a case where Defendants engaged in conduct that went beyond the scope of their contract; instead, Plaintiff has identified Defendants' failure to perform the contract as the very same conduct giving rise to her negligence claim. In such a case, the contract "supersedes the tort standard," and Plaintiff's remedy is therefore "limited to a suit for breach of contract." *Rexnord*, 286 F.3d at 1005.

The facts underlying the Indiana Court of Appeals' decision in *Stone City Bank* are also instructive on this point. In that case, the plaintiff opened a checking account with the defendant bank, and the bank later dishonored three of plaintiffs' checks. 691 N.E.2d at 1248. Three years later, the plaintiff sued, alleging that he had suffered harm to both his personal reputation and his business reputation. *Id.* The trial court granted judgement on the pleadings for the bank. *Id.* It noted that the plaintiff's alleged injuries were the sort of damages typical of tort claims, such that Indiana's two year statute of limitations for personal injury claims barred the plaintiff's suit. *Id.* at 1248-49.

The court of appeals reversed. It doing so, it observed that:

 [t]he alleged source of the damages Wells claims is the Bank's wrongful
 dishonoring of Wells' checks; its failure to notify Wells in a timely manner that

the checks were being dishonored; and its wrongful acceleration of a note Wells executed with the bank. None of that conduct can be characterized as independent of the contractual relationship which arose when Wells and the defendants entered into a banking relationship. . . . [T]he parties' contractual relationship is inseparable from the wrongs Wells alleges.

*Id.* at 1249. Based on this analysis, the court determined that the lawsuit was actually "a breach of contract action," such that the trial court erred when it applied the two-year statute of limitations for tort claims. *Id.*

Plaintiffs' allegations in this case are similar. As noted above, she alleges harm from depression and weight loss—that is, physical injuries for which damages are often recoverable in tort. The Defendants' allegedly wrongful conduct, however, is "inseparable" from the Defendants' contractual duties. Defendants had certain duties under their contracts with Freddie Mac, and those are *precisely* the duties that Plaintiff alleges were breached. [*See, e.g.*, Dkt. 35 at 4 ("Defendant breached its duty to observe [its] contractual duties[.]"); Dkt. 36 at 22 ("Defendant, at least negligently breached its duty to service the Promissory Note and Mortgage with care, skill, and faithfulness[.]").] Just as in *Stone City Bank*, then, Plaintiff has not alleged any conduct that was "independent of the [Defendants'] contractual relationship." 691 N.E.2d at 1249. Thus, even if her allegations do involve a claim of personal injury, her allegations do not give rise to a tort claim, *see id.*, and she accordingly has not adequately pled her claim for negligence.

To try to save her negligence claim, Plaintiff asks this court impose a separate duty of care on Defendants independent of any contractual relationships that the Defendants may have had. She specifically "requests [that] this court create a common law duty for transferee loan servicers to observe reasonable care following a service transfer" in investigating all claims of "failure to honor a loan modification agreement with a transferor service." [Dkt. 36 at 25; *see*

*also* Dkt. 35 at 6.] She notes that under Indiana law, courts may find that a duty exists after "balancing three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003). She also contends that Plaintiff is in a relatively powerless position compared to her mortgage servicers, such that the factors described in *Heck* support creating a duty of reasonable care. [Dkt. 36 at 26-27.] Finally, she contends that the existence of a duty "should be left to the fact-finder" and should not be resolved on a motion to dismiss. [*Id.* at 26.]

This Court is not the appropriate venue for Plaintiff's argument. When applying state law, "federal courts are to be conservative, not innovative." *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 906 (S.D. Ill. 2008). "[F]ederal courts should not 'speculate on any trends in state law,'" *id.* (quoting *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987)), and they must show "restraint . . . in announcing new state law principles." *Id.* (quoting *Gust K. Newberg Constr. Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir. 1987)). "Moreover, a federal court should 'not anticipate changes to state law in the absence of concrete evidence that the state court would adopt that position today,'" *id.* at 907 (quoting *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006)), and "when the court is 'faced with opposing plausible interpretations of state law,' the court should 'choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.'" *Id.* (quoting *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996)).

Plaintiff in this case has not put forth "concrete evidence" that Indiana courts would recognize the duty she asks this court to create. She argues that an Indiana court *could* apply the factors in *Heck* to create this duty, but she cites no Indiana case law to support her analysis of the

second and third factors from *Heck*. [*See* Dkt. 36 at 27-28.] In addition, her analysis of the first factor—the relationship between the parties—is flawed: she claims that she had a "contractual" relationship with Ocwen and Nationstar, but, as noted above, she later acknowledged that she had no actual agreement with either Defendant. [Dkt. 35 at 7; Dkt. 36 at 26.] Finally, the Court notes that adopting Plaintiff's position would expand rather than contract liability under Indiana law, such that this Court should avoid taking such a position. *See Birchler*, 88 F.3d at 521. As a result, this Court will not create the duty Plaintiff seeks.

Next, Plaintiff's contention that this issue must be left to the fact-finder is incorrect. The very case on which Plaintiff rests her argument states that "[w]hether the defendant must conform his conduct to a certain standard for the plaintiff's benefit *is a question of law for the court to decide.*" *Heck,* 786 N.E.2d at 268 (emphasis added). Thus, although there may be limited circumstances in which factual questions play a role in determining the existence of a duty,[10] the general rule is that duty is a question of law. *See id.*; *see also Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004) ("Generally, whether a duty exists is a question of law for the court to decide."). The Court may thus properly evaluate Plaintiff's argument at the current stage of this litigation and need not defer to the fact-finder to conclude that accepting Plaintiff's proposed duty under state law is inappropriate.

Plaintiff finally attempts to save her negligence claim against Nationstar by recasting it as a negligent misrepresentation claim. [Dkt. 36 at 7 ("Ms. Binns has generally pled the tort for Negligence in her complaint. To the extent that this court does not consider such pleadings

---

[10] These circumstances arise where the question of duty "depends upon underlying facts," such as whether the parties did or did not have a particular sort of relationship. *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind. 2004). In *Rhodes*, for instance, a factual dispute existed about which party controlled the property at issue, and resolution of this issue was thus necessary to determine which party owed a duty to the plaintiff invitee. *See id.* Plaintiff's current argument, in contrast, presents no such underlying factual disputes, and is instead based solely on her contention that the Court should, as a general matter, create a new duty under state law.

sufficient under Federal Rules of Civil Procedure 12(b)(6), Ms. Binns requests allowance to specifically plead the tort of Negligent Misrepresentation in her amended complaint."). Indiana courts have defined such a claim as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank*, 929 N.E.2d at 747 (quoting Restatement (Second) of Torts § 552(1)). The duty associated with such claims extends to those who are not in privity with the defendant, but it extends only to those parties that the defendant actually knew would rely on the information furnished by the defendant. *Id.* at 747. ("A professional may owe a duty to a third party with whom the professional has no contractual relationship, but the professional must have actual knowledge that such third person will rely on his professional opinion."). Here, the communications between Plaintiff and Nationstar plainly gave Nationstar actual knowledge that Plaintiff would rely on the information Nationstar provided, such that Nationstar could be liable to Plaintiff on a theory of negligent misrepresentation.

As noted above, however, plaintiffs alleging negligent representation must show that they suffered "pecuniary loss *caused to them by their justifiable reliance* upon the information" the defendant provided. *Id.* (emphasis added). Plaintiff in this case argues that she did rely on various statements from Nationstar, but her arguments are merely the same as those advanced in support of her fraudulent misrepresentation claim. [*See* Dkt. 36 at 6.] Thus, although Plaintiff argues that Nationstar furnished false statements about her account on numerous occasions, the complaint itself reveals that Plaintiff always continued to pay only the amount she believed was due under the terms of the modification. [*See, e.g.*, Dkt. 1 ¶ 33, 41, 54, 61, 67.] And although

Plaintiff argues that the foreclosure lawsuit resulted from her reliance on Nationstar's advice to withhold two mortgage payments, the complaint itself reveals that the mortgage was in default long before the missed payments and the amount of delinquency was much greater than the amount of any missed payments. [Dkt. 1 ¶¶ 74, 86.] Plaintiff has thus failed to demonstrate that she actually relied on the information Nationstar furnished or that any reliance caused any damages, and she therefore cannot establish a negligent misrepresentation claim. *See U.S. Bank*, 929 N.E.2d at 747.

In addition, the Indiana Supreme Court's recognition of the tort of negligent representation in *U.S. Bank* was, as previously noted, fact-dependent and specific to the title insurance industry. *See id.* (emphasis added) ("*In the context of the title insurance industry*, Indiana courts have shown a willingness to go beyond the terms of the insurance contract to explore whether a duty might lie in tort as well as contract."). Other courts have also stated that the tort is recognized only in limited situations, such as when the defendant is the plaintiff's employer or when the defendant is a "professional" such as an attorney or broker. *See, e.g.*, *Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 595 & n.18 (N.D. Ind. 2012). Plaintiff in this case thus asks the Court to expand the scope of the tort of negligent misrepresentation beyond that which the Indiana courts have previously recognized. As described above, it is generally improper for a federal court to do so, *see Cima*, 556 F. Supp. 2d at 906-07, such that once again, Plaintiff's negligence claim is legally insufficient.

Finally, the Court notes that allowing Plaintiff to amend her negligence claims would be fruitless: Plaintiff's own assertions indicate that there was no contract that could support a duty between Plaintiff and Defendants, [Dkt. 35 at 7; Dkt. 36 at 26], and the Court, as a matter of law, will not create the new duty that Plaintiff advocates. *See Cima*, 556 F. Supp. 2d at 906-07.

Further, even if the Court granted Plaintiff's request to re-plead her claim as one for negligent misrepresentation, [Dkt. 36 at 7], Plaintiff could not establish the required elements of this cause of action. Because any amendment would be futile, the Magistrate Judge recommends that Plaintiff's negligence claims against Ocwen and Nationstar be dismissed with prejudice. *See Rosenberg*, 705 F.3d at 608.

### G. Count XI: Wrongful Interference with Contractual Relations

Plaintiff next alleges that Nationstar and Ocwen wrongfully interfered with her contractual relationship with Freddie Mac. [Dkt. 1 ¶¶ 143-48.] The elements for this cause of action in Indiana are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010).

In this case, Plaintiff alleges that she had a valid and enforceable contract with Freddie Mac. [Dkt. 1 ¶ 143.] She also alleges that this arrangement was modified pursuant to the terms of the Home Affordable Modification agreement. [Dkt. 36 at 31; *see also* Dkt. 1 ¶ 24.] In its reply, Nationstar argues that the Home Affordable Modification agreement "was, on its face, unenforceable" on the grounds that even if Plaintiff completed the trial payments, certain paperwork was never completed. [Dkt. 40 at 2.] The complaint, however, specifically alleges that Plaintiff "signed and *completed* [the agreement] with Ocwen," and that "an Agent of Ocwen named 'Earl Hill' had received the Signed Agreement." [Dkt. 1 ¶ 24 (emphasis added).] Later, the complaint also alleges that Plaintiff contacted Nationstar to ask why it had not recognized the agreement "despite [Plaintiff] successfully completing the Home Affordable Modification process and sending the related paperwork to Nationstar." [Dkt. 1 ¶ 31.] Taking these allegations

as true—as the Court must at this stage—it is reasonable to infer that the Home Modification Agreement was in fact completed,[11] such that Plaintiff has adequately pled that a valid and enforceable contract existed.

Whether Nationstar intentionally *induced a breach* of that contract is a different matter. As Defendant notes, Plaintiff was already in default on the original loan at the time that Nationstar began servicing Plaintiff's mortgage, [Dkt. 21 at 22 (citing Dkt. 1 ¶ 86)], and Nationstar therefore could not have induced the breach of the original mortgage.

In response, Plaintiff clarifies that her allegations are based not on the original loan, but "on a breach of the Loan Modification Agreement." [Dkt. 31 at 36.] Even then, however, Nationstar was not responsible for any breach of this contract: As noted above, Plaintiff ignored the notices from Nationstar and continued to pay exactly what she believed was due under the terms of the Home Modification Agreement. [*See, e.g.*, Dkt. 1 ¶¶ 20, 24, 44, 54, 58, 67.] Indeed, the essence of her complaint is that Nationstar refused to acknowledge that the modification required her to pay *only* these amounts. Assuming the modification was in fact enforceable— and, as described above, Plaintiff's allegations indicate it was—then Plaintiff never actually breached the agreement. By her own allegations, Plaintiff was required to pay only $887.20 per month, [*see, e.g.*, Dkt.1 ¶ 13], and that is exactly what she did pay. [*See, e.g.*, *id.* ¶¶ 20, 24, 44, 54, 58, 67.] Plaintiff therefore did not breach the modification agreement, and without such a breach, there can be no liability for *inducing* a breach. *See, e.g.*, *Hurst v. Town of Shelburn*, 422 N.E.2d 322, 325 (Ind. Ct. App. 1981) ("[T]he jury's verdict . . . indicates there was no breach of

---

[11] Nationstar itself seems to agree with this conclusion, as its opening brief asserts that "after researching the information about the Loan Mod Ms. Binns provided, Nationstar ultimately honored it." [Dkt. 21 at 19.] Nationstar does not explain why it allegedly did so if, as it asserts, the modification was actually "on its face, unenforceable." [Dkt. 40 at 2.] Indeed, if the contract had been unenforceable, then it seems Nationstar's decision to honor it would have needlessly exposed it to liability to the note holder for improperly servicing the mortgage.

the contract and therefore indicates the absence of an element essential to hold [defendant] liable for interference.").

The only allegation potentially inconsistent with this conclusion is Plaintiff's claim that Nationstar at one point "advised [her] to not make any payments until she received 'paperwork' from Nationstar" confirming that the agreement was effective. [Dkt. 1 ¶ 50.] Relying on this advice could have caused Plaintiff to cease making payments as required under the terms of the modification, thereby leading to Plaintiff's alleged breach of the modification. The very next paragraph of the complaint, however, indicates that Plaintiff almost immediately "renewed making payments," regardless of Nationstar's advice. [Dkt. 1 ¶ 51.] In addition, Plaintiff herself noted that, when foreclosure proceedings eventually did begin, the amount of her alleged arrearage was "far more" than the amount of any missed payments. [Dkt. 36 at 9 n.8 (citing Dkt. 1 ¶¶ 60, 62, 63, 65, 66, 68, 69).] Thus, it was not the missed payments that caused any alleged breach of contract, such that Nationstar's conduct cannot give rise to liability for wrongful interference with that contract. The Magistrate Judge accordingly recommends that this count of Plaintiff's complaint be **DISMISSED** with respect to Nationstar.

Plaintiff's interference claim fares no better with respect to Ocwen. If her claim is based on a breach of the original mortgage, then Plaintiff's pleading is insufficient because her complaint contains no details about any interaction with Ocwen prior to entering the Home Affordable Modification. [*See* Dkt. 1.] By that time, Plaintiff was already in default on the original mortgage, [Dkt. 1 ¶ 86], such that Ocwen could have had nothing to do with the original breach. Moreover, if Plaintiff instead alleges that Ocwen induced a breach of the modification agreement, then, as with Nationstar, this claim is undercut by Plaintiff's insistence that she actually complied with the terms of the modification. In either case, Plaintiff has not stated a

plausible claim against Ocwen, and the Magistrate Judge accordingly recommends that this count be **DISMISSED**.

Finally, this count should be dismissed with prejudice with respect to both defendants. As noted above, the essence of this lawsuit is that Plaintiff has not breached her contract because any assertion that she owes more than she paid is incorrect. To save her wrongful interference claims, Plaintiff would thus have to plead facts inconsistent with the rest of her allegations, and granting leave to amend the complaint would be futile. Dismissal with prejudice is therefore appropriate. *See Rosenberg*, 705 F.3d at 608.

### H. Count XII: Negligence Per Se

Plaintiff next asserts that Defendant Ocwen's conduct constituted negligence per se. [Dkt. 1 ¶¶ 149-52.[12]] In Indiana, a finding of negligence per se requires that the defendant violate a statute or ordinance that is "designed to protect the class of persons in which the plaintiff is included against the risk of the type of harm which has in fact occurred as a result of its violation." *Ray v. Goldsmith*, 400 N.E.2d 176, 178 (Ind. Ct. App. 1980). The statute or ordinance at issue "supplies a defendant's standard of care—the second element in a tort claim." *F.D. v. Indiana Dep't of Child Servs.*, 1 N.E.3d 131, 143 n.12 (Ind. 2013) (Rush, J., concurring in part and dissenting in part) (citing *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 275 (Ind. 2003)). The first element—a duty to use reasonable care—must exist "without reliance on the statute."[13] *Id.*; *see also Moore v. Hamilton Se. Sch. Dist.*, No. 1:11-CV-01548-SEB-DML, 2013 WL 4607228, at *10 (S.D. Ind. Aug. 29, 2013) ("Negligence per se under state tort law can be premised on the

---

[12] This portion of the complaint targets both Defendants, but, as noted earlier, Plaintiff withdrew her negligence per se claim against Nationstar. [Dkt. 36 at 3.]

[13] This limitation is necessary in order to confine the scope of the negligence per se cause of action. If the plaintiff in such actions did not need to establish an independent duty on the part of the defendant, then "every statute that specified a standard of care would be automatically enforceable by tort suits for damages—every statute in effect would create an implied private right of action—which clearly is not the law." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004)

violation of a federal statute, with the statute providing the standard of conduct and state common law furnishing the other elements of the tort.").

Here, Plaintiff alleges 1) that Ocwen "owed a duty to the Plaintiff pursuant to Freddie Mac Regulation 56.5(e) and other similar federal regulations;" 2) that Ocwen breached this duty; and 3) that Plaintiff "incurred damages as a direct and proximate cause of [Ocwen's] breach." [Dkt. 1 ¶¶ 150-52.] She adds that "Freddie Mac Regulation 56.5(e) and other regulations violated by Ocwen were intended to protect the class of persons which includes Ms. Binns and to protect against the risk of the specific type of harm incurred by Ms. Binns in the current instance." [*Id.* ¶ 83.]

This pleading is insufficient for two reasons. First, Plaintiff claims that Ocwen "owed a duty pursuant to Freddie Mac Regulation 56.5(e)." As noted in *F.D.*, however, the plaintiff in a negligence per se claim cannot rely on the statute or regulation itself to create the defendant's duty. 1 N.E.3d at 143 n.12. To establish a duty in this case, Plaintiff thus needed to allege facts giving rise to a duty independent of the Freddie Mac regulation.

Plaintiff did not do so: As previously described, Plaintiff had no contractual relationship with Ocwen; thus, even if Ocwen's mortgage servicing agreement did create a "general duty to perform [its] service with reasonable care," *Crum*, 552 N.E.2d at 827, that duty did not extend to Plaintiff. Also, as explained above, this Court will not accept Plaintiff's invitation to create a new common law duty of care for mortgage servicers. Finally, Plaintiff has articulated no other basis for a duty existing independent of the Freddie Mac regulation. [*See* Dkt. 35 at 10-12.] As a result, Plaintiff has failed to assert facts supporting the first element of her negligence per se claim.

Second, Plaintiff's negligence per se claim is based on a violation of a Freddie Mac regulation. In Indiana, however, a violation of such a regulation cannot constitute negligence per se. *Beta Steel v. Rust*, 830 N.E.2d 62, 73-74 (Ind. Ct. App. 2005) ("Violation of an administrative regulation generally can be considered evidence of negligence for a jury to consider, though it is not negligence per se."); *see also Huffman v. Dexter Axle Co.*, 990 N.E.2d 947, 954 (Ind. Ct. App. 2013) (same); *Androusky v. Walter*, 970 N.E.2d 687, 694 (Ind. Ct. App. 2012) (internal quotation marks omitted) ("[Plaintiff] argues that the trial court should have instructed that violation of the regulation is negligence per se. Such an instruction, however, would have been error because the violation of an administrative regulation is only some evidence of negligence for the jury to consider."); *Zimmerman v. Moore*, 441 N.E.2d 690, 696 (Ind. Ct. App. 1982) ("Violation of an administrative regulation, therefore, is only some evidence of negligence for the jury to consider."). At most, then, any violation of the Freddie Mac regulation in this case was merely evidence that a fact-finder could have considered when assessing Plaintiff's negligence claim. As described above, however, Plaintiff's negligence claim is subject to dismissal, and the violation of the Freddie Mac regulation is thus irrelevant to Plaintiff's remaining claims. Further, because the violation of the regulation at issue cannot, as a matter of law, give rise to a negligence per se claim in Indiana, the Magistrate Judge recommends that the Court **DISMISS** this claim with prejudice.

## I. Count XIII: Breach of Duty of Good Faith and Fair Dealing

Plaintiff's final claim is that Nationstar breached its duty of good faith and fair dealing. [Dkt. 1 ¶¶ 153-59.] Nationstar contends that no such duty existed, [Dkt. 21 at 17-18], and the parties agree that in Indiana, such a duty arises only in circumstances involving employment contracts, insurance contracts, ambiguous contracts, or fiduciary relationships. [Dkt. 21 at 17; Dkt. 36 at 11 (citing *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App. 2011)).]

Plaintiff argues that the last circumstance applies. She alleges that "Nationstar, as an escrow agent, established a fiduciary duty to Ms. Binns and breached this duty" by 1) "mishandling her escrow account which was maintained and operated by Nationstar" and 2) "inappropriately changing her estimated monthly escrow payments." [Dkt. 36 at 12.][14] The complaint supports these allegations, [*see, e.g.*, Dkt. 1 ¶ 91 ("Nationstar's actions resulted in misappropriation and/or erroneous application of escrow funds[.]")], but in reply, Defendant contends that its role as an escrow agent did not create a fiduciary relationship. [Dkt. 40 at 10.]

In Indiana, "one who assumes 'to act as a depository in escrow occupies a fiduciary relationship to each of the parties.'" *Meridian Title Corp. v. Pilgrim Fin., LLC*, 947 N.E.2d 987, 992 (Ind. Ct. App. 2011) (quoting *In re Marriage of Glendenning*, 684 N.E.2d 1175, 1178 (Ind. Ct. App. 1997)). The escrow holder is thus the agent of both parties and owes a fiduciary duty to both parties. *Id.* In this case, Plaintiff's complaint indicates that Nationstar was acting as an escrow agent for Plaintiff, [*see, e.g.*, ¶¶ 21, 29, 40, 48, 57, 60], such that Nationstar did in fact owe a fiduciary duty to Plaintiff. *See Meridian Title*, 947 N.E.2d at 992.

Nationstar opposes this conclusion on the grounds that the holding in *Meridian Title* was confined the facts of that case. [*See* Dkt. 40 at 10-12 (asserting that nothing in the case "contains a declaration that a servicer or even an escrow agent has a fiduciary duty as a matter of law").] In *Meridian Title*, however, the court generally stated "we also conclude that parties to an escrow bear a duty towards one another to act with due care." 947 N.E.2d at 992. The court did not state that "these" parties had such a duty, or that the parties "in this case" had such a duty. *See id.*

---

[14] Nationstar faults Plaintiff for not specifically mentioning a "fiduciary" relationship in her complaint, [Dkt. 40 at 8], but this omission is not fatal to Plaintiff's claim. *See, e.g.*, *Cheese Depot, Inc. v. Sirob Imports, Inc.*, No. 14 C 1727, 2015 WL 1214069, at *2 (N.D. Ill. Mar. 13, 2015) (citing *Geinosky*, 675 F.3d at 746 n.1) ("A plaintiff opposing a Rule 12(b)(6) motion to dismiss may elaborate on its factual allegations if the newly-provided detail is consistent with the complaint."). As explained below, Plaintiff's description of the fiduciary relationship in this case is consistent with the complaint's allegations regarding the escrow arrangement between Plaintiff and Nationstar. Thus, Plaintiff's elaboration on her final count is not inappropriate.

Thus, contrary to Defendant's argument, *Meridian Title* does stand for the general proposition that an escrow account creates a fiduciary relationship.

This conclusion is also consistent with the way this Court has previously applied *Meridian Title*. In *Perron v. JP Morgan Chase Bank, N.A.*, the plaintiffs sued Chase Bank on the grounds that, *inter alia*, Chase had improperly maintained the plaintiff's escrow account. No. 1:12-CV-01853-TWP-TAB, 2014 WL 931897, at *1-2 (S.D. Ind. Mar. 10, 2014). In evaluating the plaintiffs' claim for breach of the duty of good faith and fair dealing, the Court cited *Meridian Title* and concluded that "[t]he existence of the escrow account created a fiduciary relationship between Chase and the Homeowners, regardless of whether Chase was already an agent for Fannie Mae or whether there was an actual escrow agreement." *Id.* at *5. Chase's duty thus did not depend on any particular facts of the case; instead, the mere "existence" of the escrow account created the fiduciary relationship. In this case as well, then, the existence of the escrow account created a duty between Plaintiff and Defendant, such that Defendant did have a duty of good faith and fair dealing.

Nationstar also argues that this case is distinguishable from *Meridian Title* and *Perron* because those cases involved situations where the defendant had "mishandled the funds in the escrow account" or had "released [escrowed] funds to the wrong individuals." [Dkt. 40 at 11-12.] Nationstar asserts that Plaintiff does not allege that similar misconduct occurred in this case, such that plaintiff has not stated a claim for any breach of the duty of good faith and fair dealing. [*See id.*] Plaintiff's complaint, however, specifically states that "Nationstar's actions resulted in misappropriation and/or erroneous application of escrow funds paid by the Plaintiff to Nationstar for deposit in Plaintiff's escrow account for payment of property taxes and home owners' insurance." [Dkt. 1 ¶ 91.] The complaint also alleges two specific instances in which Nationstar

placed Plaintiff's payments in a "suspense account" rather than applying them to the escrow account. [Dkt. 36 at 13 (citing Dkt. 1 ¶ 28, 39).] Plaintiff therefore has alleged that Nationstar mishandled her escrow account, such that her claim is similar to the claims that were recognized as viable in *Meridian Title* and *Perron*.

Nationstar finally argues that Plaintiff's claim is foreclosed by the Indiana Court of Appeals' decision in *Jaffri*. [Dkt. 44 at 3.] There, the court noted that "[c]ontractual agreements do not give rise to a fiduciary relationship creating a duty" and that "the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence." *Jaffri*, 2015 WL 630434, at *3 (citations omitted). Similarly, "mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so. Absent special circumstances, a lender does not owe a fiduciary duty to a borrower." *Id.* (citation omitted).

Nationstar seizes on this language to conclude that its relationship to Plaintiff did not create a fiduciary duty, [Dkt. 44 at 4], but this portion of *Jaffri* is not applicable to Plaintiff's claims. As noted above, Nationstar's fiduciary duty is not based on a contract between Nationstar and Plaintiff, nor is it based on any creditor-debtor relationship between Nationstar and Plaintiff. Rather, it is based on the parties' escrow arrangement. *Jaffri's* statements regarding the effect of *other* relationships are thus irrelevant to Plaintiff's claims, and Plaintiff has adequately pled her claim for breach of the duty of good faith and fair dealing. The Magistrate Judge accordingly recommends that Defendant's motion to dismiss this claim be **DENIED**.

### III. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Defendants' motions to dismiss, [Dkts. 18 & 20], be **GRANTED IN PART** and **DENIED IN PART**. Count

I (alleging violation of the IHLPA against Nationstar) should remain pending. Count II (alleging intrusion upon seclusion against Nationstar) should be dismissed with prejudice in its entirety. Count III (alleging violation of the FDCPA by Nationstar) should remain pending. Count IV (alleging fraudulent misrepresentation against Nationstar) should be dismissed with prejudice in its entirety. Count V (alleging violation of the CVRA against Nationstar) should remain pending. Count VI (alleging intentional infliction of emotional distress against Nationstar and Ocwen) should be dismissed with prejudice in its entirety. The complaint contained no Count VII. Count VIII (alleging violation of the UCC by Nationstar) should remain pending. Count IX (alleging negligence against Nationstar and Ocwen) should be dismissed with prejudice in its entirety. Count X (alleging negligent infliction of emotional distress against Nationstar and Ocwen) should be dismissed with prejudice in its entirety. Count XI (alleging wrongful interference with contractual relations against Nationstar and Ocwen) should be dismissed with prejudice in its entirety. Count XII (alleging negligence per se against Nationstar and Ocwen) should be dismissed with prejudice in its entirety. Count XIII (alleging breach of the duty of good faith and fair dealing against Nationstar) should remain pending. In summary, all claims against Ocwen should be dismissed with prejudice and this case will proceed with regard to Counts I, III, V, VIII, and XIII against Nationstar only. Any objections to the Magistrate Judge's recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  04/01/2015

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jessica Lauren Pixler
ROTHBERG LOGAN & WARSCO LLP
jpixler@rlwlawfirm.com

Susan Elizabeth Trent
ROTHBERG LOGAN & WARSCO LLP
strent@rlwlawfirm.com

Mark W. Baeverstad
ROTHBERG, LOGAN & WARSCO LLP
mbaeverstad@rlwlawfirm.com

Thomas B. Trent
ROTHBERG, LOGAN & WARSCO LLP
ttrent@rlwlawfirm.com

Syed Ali Saeed
SAEED & LITTLE LLP
ali@sllawfirm.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com