**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| RAMONA  BINNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-01764-TWP-MJD |
| | ) | |
| OCWEN LOAN SERVICING, LLC, and | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ADOPTING AS MODIFIED THE REPORT
AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendant Nationstar Mortgage LLC's ("Nationstar")

Objection to the Magistrate Judges' Report and Recommendation. (Filing No. 56.)  Plaintiff,

Ramona Binns ("Binns") filed a complaint alleging numerous claims against Defendants, Ocwen

Loan Servicing, LLC ("Ocwen") and Nationstar.  (Filing No. 1.)  Thereafter, Ocwen filed a motion

to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 18) and

Nationstar also filed a Rule 12(b)(6) motion to dismiss (Filing No. 20).  The Court referred both

motions to dismiss to the Magistrate Judge for a Report and Recommendation.  (Filing No. 52.)

On April 1, 2015, the Magistrate Judge submitted his Report and Recommendation recommending

dismissal of all but five claims against Nationstar.  (Filing No. 55).  Nationstar filed a timely

objection.  The Court **GRANTS IN PART** and **DENIES IN PART** Nationstar's objections and

adopts the Report and Recommendation as modified below.

# I. LEGAL STANDARD

## A.    Review of the Magistrate Judge's Report and Recommendation

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any findings of fact.  *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).  *See also*, 28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1).   The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding.  28 U.S.C. § 636(b)(1) (2012) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions"); Fed. R. Civ. P. 72(b)(3).  *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those elements *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law.  28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3).  *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).  The court may, however, defer to those conclusions to which timely objections have not been raised by a party.  *Schur*, 577 F.3d at 760-61.  Further, if a party fails to object to a magistrate judge's

report and recommendation, or objects on some issues and not others, he waives appellate review of the issues to which he has not objected. *Zema Sys. Corp.*, 170 F.3d at 739.

## B.   12(b)(6) Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Fed. R. Civ. P. 8 requires that a complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests; and the factual allegations must raise a right to relief above the speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009) (explaining that, consistent with the notice pleading standard, the purpose of the statement required by Rule 8 is to provide the defendant with fair notice of what the claim is and the grounds upon which it rests), *Tamayo*, 526 F.3d at 1081, 1083.

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned,

the defendant unlawfully harmed-me accusation" and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Bissessur*, 581 F.3d at 603.

Although this does not require heightened fact pleading of specifics, it does require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("(a) plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief"); *Bissessur*, 581 F.3d at 603 ("(a) claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## II.  <u>BACKGROUND</u>

The following facts, which the Magistrate Judge took from Binns' Complaint, are accepted as true for purposes of this motion to dismiss and all reasonable inferences are drawn in a light most favorable to Binns.  *See Tamayo*, 526 F.3d at 1081.  Nationstar did not object to the Magistrate Judge's recitation of the facts and the Court repeats the facts in this Entry, with only minor modifications for clarity.

On January 30, 2008, Binns signed a mortgage agreement for property located in Indianapolis, Indiana.  (Filing No. 1 at ¶ 8.)  The original lender for the mortgage was Taylor, Bean & Whitaker Mortgage Corp., and the current holder of the promissory note is the Federal Home Loan Mortgage Corporation ("Freddie Mac").  *Id.* at ¶¶ 8-9.  The note holder contracted to have the mortgage agreement serviced by Ocwen.  *Id.* at ¶ 11.

In February 2013, Ocwen sent Binns a notification that she was eligible for a Home Affordable Modification ("Loan Modification Agreement"). *Id.* at ¶ 12. The notice stated that if Binns complied with the terms of the modification agreement, then Ocwen would modify her mortgage and waive any prior late charges that Binns had incurred. (*Id.*; Filing No. 1 at 1-3.) The agreement required Binns to make three "Trial Payments" of $887.20 on the first day of March, April, and May of 2013. (Filing No. 1 at ¶ 13.)

Binns made all three payments at the proper times, and Ocwen cashed each check. *Id.* at ¶¶ 14-16. On the same day as the last payment, May 1, 2013, Ocwen sent Binns a letter stating that the servicing of her mortgage had been transferred to Nationstar. *Id.* at ¶ 17. At this time, the mortgage was already in default, *Id. at* ¶ 86, but Binns believed that, under the terms of the Loan Modification Agreement, she could avoid foreclosure by continuing to pay $887.20 each month. *Id.* at ¶¶ 20, 26.

On June 1, 2013, Binns sent her monthly mortgage payment to Nationstar. *Id.* at ¶ 20. Having completed the trial period and Loan Modification Agreement, she paid $887.20 by check, which was cashed by Nationstar on June 3, 2013. *Id.* On June 5, 2013, however, Nationstar sent Binns a notice stating that she was delinquent in her payments. *Id.* at ¶ 21. Binns called Nationstar to ask about the alleged delinquency, and a Nationstar employee told her that Nationstar had no documentation related to a Loan Modification Agreement. *Id.* at ¶ 23.

On July 3, 2013, Binns faxed a completed copy of the Loan Modification Agreement to Nationstar. *Id.* at ¶ 24. She also submitted her July mortgage payment in the amount of $887.20 by check, which was cashed by Nationstar on July 10, 2013. *Id.* at ¶ 26. Three weeks later, on July 25, 2013, Nationstar sent Binns a notice, stating that, as of March 1, 2013, Binns was in

default on her mortgage.  *Id.* at ¶ 30.  Nationstar added that Binns owed almost $4,977.05, and that foreclosure proceedings could begin within 30 days of the notice.  *Id.*

On July 30, 2013, Binns called Nationstar and asked about the default notice.  *Id.* at ¶ 31. Nationstar again denied that it had received any paperwork related to a Loan Modification Agreement.  *Id.*  The next day, Binns faxed another copy of her completed Loan Modification Agreement to Nationstar.  *Id.* at ¶ 32.  She also sent a completed copy through the mail and submitted her August mortgage payment.  *Id.*  Binns paid $887.20 again.  *Id.* at ¶ 33.

On August 5, 2014, Nationstar returned Binns' August payment on the grounds that it was insufficient to bring her account current.  *Id. at* ¶ 34.  Over the next two weeks, Binns repeatedly called Nationstar to try to determine whether Nationstar had received the Loan Modification Agreement documentation and to ask why Nationstar continued to claim that she was delinquent in her payments.  *Id.* at ¶¶ 35-38.  Her efforts to resolve the dispute proved unsuccessful, and in September 2013, Nationstar again notified Binns that she had an unpaid balance on her account. *Id.* at ¶ 41.  This process continued for the next eight months, with Binns contacting Nationstar regarding the Loan Modification Agreement at least four more times and Nationstar denying that it received the documentation each time.  *Id.* at ¶¶ 42-71.  At one point, Nationstar's employees advised Binns to stop making monthly payments until Nationstar confirmed that the modification agreement was in place.  *Id.* at ¶ 50.  Nationstar, however, continued to send delinquency notices, and Binns resumed making her monthly payments for $887.20.  *Id.* at ¶ 51.  Ultimately, Binns' efforts to establish that she had completed her Loan Modification Agreement were unsuccessful; and, in June 2014, Nationstar filed a complaint to foreclose on Binns' property.  *Id.* at ¶ 72.

Binns alleges that her interactions with Defendants caused stress, depression, and weight loss, and that she incurred medical costs, time lost, and pecuniary costs in the form of fuel, postage, and mileage in corresponding with Defendants. *Id.* at ¶¶ 87-88.

## III. <u>DISCUSSION</u>

### A.    <u>Preliminary Matters</u>

In his Report and Recommendation, the Magistrate Judge recommended dismissal of all claims against Ocwen.  Binns did not object to this recommendation, and the Court considers dismissal of these claims to be appropriate.  Accordingly, the Court **ADOPTS** that portion of the Magistrate Judge's recommendation, and the Court **DISMISSES WITH PREJUDICE** all of Binns' claims against Ocwen.  Consequently, Ocwen is no longer a defendant in this case.

The Magistrate Judge also recommended dismissal of the following claims against Nationstar: intrusion upon seclusion, fraudulent misrepresentation, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, wrongful interference with contractual relations, and negligence per se. Binns similarly did not object to this recommendation, and the Court considers dismissal of these claims to also be appropriate. Accordingly, the Court **ADOPTS** that portion of the Magistrate Judge's recommendation, and the Court **DISMISSES WITH PREJUDICE** the aforementioned claims against Nationstar.

In addition, the Magistrate Judge recommended that Binns' claim against Nationstar under the Fair Debt Collection Practices Act remain pending because Nationstar did not move to dismiss that claim. The Court agrees and also **ADOPTS** that portion of the Magistrate Judge's recommendation.

Finally, the Magistrate Judge recommended that four additional claims against Nationstar should remain pending, including: violation of Indiana Home Loan Practices Act, violation of

Indiana Crime Victim's Relief Act, violation of the Uniform Commercial Code, and breach of the Duty of Good Faith and Fair Dealing. Nationstar objects to the Magistrate Judge's recommendations regarding these four claims.

**B.      Indiana Home Loan Practices Act Claim**

Nationstar objects to the Magistrate Judge's conclusion that Binns' claim under the Indiana Home Loan Practices Act ("IHLPA") should remain pending. Specifically, Nationstar asserts that it did not have "actual knowledge," as required, that the Loan Modification Agreement was enforceable. Specifically, Nationstar points to the Loan Modification Agreement attached to Binns' complaint and argues that because it is not signed by both Binns and Ocwen, Nationstar was never provided a valid, complete and enforceable agreement. The Court is not persuaded.

The IHLPA provides that a person may not "[e]ngage in a deceptive act in connection with a mortgage transaction". Ind. Code § 24-9-3-7(c)(3). A "deceptive act" is "an act or a practice as part of a mortgage transaction, . . . in which a person at the time of the transaction knowingly or intentionally: (A) makes a material misrepresentation; or (B) conceals material information regarding the terms or conditions of the transaction." Ind. Code § 24-9-2-7(a)(1). "Knowingly" means "having actual knowledge at the time of the transaction." Ind. Code § 24-9-2-7(b).

The Magistrate Judge correctly notes that Binns sufficiently pled numerous facts which, accepted as true, demonstrate that Nationstar had knowledge of Binns' Loan Modification Agreement. Specifically, Binns alleges that, on numerous occasions, she informed Nationstar about the Loan Modification Agreement by telephone, by mail, and by facsimile. (Filing No. 1 at ¶¶ 23-24, 31-32, 38.) Accepted as true, Binns' allegations plausibly support the conclusion that Nationstar had actual knowledge of the Loan Modification Agreement. *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("[a] plaintiff still must provide only enough detail to give the defendant

fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief"); *Bissessur*, 581 F.3d at 603 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

To begin, the Court notes that the argument that the Loan Modification Agreement was unsigned and was, therefore, unenforceable was not presented in Nationstar's motion to dismiss and is novel to its objection to the Report and Recommendation. (Filing No. 21 at 18-19 and Filing No. 40 at 13 with Filing No. 56 at 5-7.) Accordingly, it would be prudent for the Court not to consider it. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("arguments not made before a magistrate judge are normally waived. . . . Failure to raise arguments will often mean that facts relevant to their resolution will not have been developed; [and] one of the parties may be prejudiced by the untimely introduction of an argument"). Nevertheless, even considering Nationstar's new argument, the Court still concludes that Binns' IHLPA claim is plausibly pled.

Binns' factual allegations plausibly support the conclusion that the Loan Modification Agreement was enforceable. Initially, the Loan Modification Agreement required Binns to make three "Trial Payments" of $887.20 on the first day of March, April, and May of 2013. (Filing No. 1 at ¶ 13.) Binns made all three payments at the proper times, and Ocwen cashed each check. *Id.* at ¶¶ 14-16. After the servicing of Binns' mortgage was transferred to Nationstar, Binns communicated the existence of the Loan Modification Agreement to Nationstar and continued to make payments in accordance with the Agreement. (Filing No. 1 at ¶¶ 20, 23-24, 26, 31-33, 38.) Nationstar accepted several of these payments. (Filing No. 1 at ¶¶ 20, 26.) Finally, as evidenced in Nationstar's motion to dismiss reply brief, Nationstar "permitted the [Loan Modification

Agreement] to take effect . . . and worked to apply the modification retroactively." (Filing No. 40 at 3.)

Nationstar's contrary argument, that the Loan Modification Agreement was not enforceable because the document submitted by Binns purportedly lacks a signature, is a contractual defense, similar to the statute of frauds.  In the typical case, a court's evaluation of a motion to dismiss is carefully limited to the allegations found in the plaintiff's complaint. *Hamilton v. Summers*, 95 F. Supp. 2d 908, 911 (N.D. Ill. 2000); 5B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* §§ 1356, 1357 (3d ed. 2015).

As a result, a court only considers defenses that are either directly pled by a plaintiff or are otherwise obvious on the face of the complaint.  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses," and "only when the plaintiff pleads itself out of court-that is, admits all the ingredients of an impenetrable defense-may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)"); *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("[a]ffirmative defenses do not justify dismissal under Rule 12(b)(6)"); Wright, Miller & Kane, *supra*, § 1357.  Courts typically limit the scope of their analysis in this way to avoid unnecessarily converting a motion to dismiss, which evaluates the formal statement of the claim, into a summary judgment motion, which evaluates the substantive merits of the claim.  Wright, Miller & Kane, *supra*, § 1357 ("the district court in its discretion may decide that a motion for summary judgment, which provides an opportunity for an investigation of the facts surrounding the bare allegations in the pleading, is a more appropriate procedural device to deal with the built-in defense than a motion to dismiss under Rule 12(b)(6).").

A statute of frauds defense is not obvious on the face of Binns' complaint; and the Court is, therefore, not at liberty to consider the defense when evaluating the sufficiency of Binns' factual pleadings.

In addition, Nationstar's contention that the Loan Modification Agreement was not signed is supported solely by the fact that the supporting documentation attached to Binns' complaint did not contain Ocwen's signature. Nationstar is reminded, however, that, at this stage of the litigation, Binns is not required to submit the full record of contractual documents to prove her claim. Indeed, Binns was not required to submit *any* documents to support her claim and only had to present a short plain statement that she is entitled to relief which is plausible on its face. Fed. R. Civ. P. 8(a)(2). *Twombly*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083; *Bissessur*, 581 F.3d at 603.

Binns has succeeded in meeting that burden. Accordingly, the Court **DENIES** Nationstar's motion to dismiss Binns' claim under the Indiana Home Loan Practices Act.

**C.**     **Indiana Crime Victims Relief Act Claim**

Nationstar also objects to the Magistrate Judge's conclusion that Binns' claim under the Indiana Crime Victims Relief Act ("ICVRA") remain pending. In this regard, Nationstar similarly asserts that it did not engage in deception because Nationstar did not have knowledge that the Loan Modification Agreement was enforceable.

The ICVRA provides that "(i)f a person . . . suffers a pecuniary loss as a result of a violation of Ind. Code §§ 35-43; 35-42-3-3; 35-42-3-4; or 35-45-9, the person may bring a civil action against the person who caused the loss". Ind. Code § 34-24-3-1. To recover under the ICVRA, a plaintiff must prove all the elements of the criminal act. *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. App. 2012). Thus, to survive a motion to dismiss, Binns must adequately plead all elements of the underlying criminal act. *See Twombly*, 550 U.S. at 562 (noting that a complaint must contain

11

"either direct or inferential allegations respecting all the material elements necessary to sustain recovery").

Binns contends that she suffered loss on account of Nationstar's acts of deception and criminal mischief. A person commits "deception" when he "knowingly or intentionally makes a false or misleading written statement with intent to obtain property". Ind. Code § 35-43-5-3(a)(2). Under the 2014 version of the statute, a person commits "criminal mischief" when he "knowingly or intentionally causes another to suffer pecuniary loss by deception". Ind. Code § 35-43-1-2(a)(2).

The Report and Recommendation correctly notes that Binns sufficiently pled numerous facts which, accepted as true, demonstrate that Nationstar "knowingly or intentionally made a false or misleading written statement with intent to obtain property". Specifically, Binns' alleges that Nationstar received notice of the Loan Modification Agreement on numerous occasions, (Filing No. 1 at ¶¶ 24, 32, 38), but that Nationstar continued to send notices stating that Binns owed an amount that was higher than the amount owed under the terms of the Loan Modification Agreement. (Filing No. 1 at ¶¶ 29, 40, 48.) Accepting these allegations as true, it is reasonable to infer that Nationstar knew that Binns did not owe the amount Nationstar asserted; and, yet, Nationstar continued to send Binns written statements with the intent to induce her to pay this amount. As the Magistrate Judge correctly concluded, this addresses all elements of the statutory definition of "deception," such that Binns has adequately pled that Nationstar committed deception.

In addition, Binns also alleges that she suffered pecuniary loss in the form of postage costs, mileage costs, and fuel costs in her dealings with Nationstar. (Filing No. 1 at ¶ 126.) Binns has,

therefore, sufficiently pled that she suffered "pecuniary loss", necessary to also plead that Nationstar committed criminal mischief.

In its objection, Nationstar repeats its argument that it did not have knowledge that the Loan Modification Agreement was enforceable. However, for the same reasons discussed above, the Court rejects this argument again. Accordingly, the Court **DENIES** Nationstar's motion to dismiss Binns' claim under the Indiana Crime Victims Relief Act.

**D.** <u>**Uniform Commercial Code Claim**</u>

Nationstar next objects to the Magistrate Judge's conclusion that Binns' claim under the Uniform Commercial Code ("UCC") should remain pending because Nationstar did not have knowledge that the Loan Modification Agreement was enforceable.

The relevant section of the UCC provides, "(i)f tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged." Ind. Code § 26-1-3.1-603(c).

Nationstar does not object to the Magistrate Judge's conclusion that, accepting Binns' allegations as true, Binns sufficiently alleged that she paid the full amount due under the mortgage, as modified by the Loan Modification Agreement. (Filing No. 1 at ¶¶ 26, 33, 41, 44, 54) (noting that each payment of $887.20 was made "pursuant to the terms of the [Loan Modification Agreement]."". Further, Nationstar does not object to the Magistrate Judge's conclusion that Binns adequately alleged that she is entitled to recover interest for her timely-tendered but wrongly-rejected payments of $887.20, made in August 2013, October 2013, May 2014, and June 2014. (Filing No. 1 at ¶¶ 33-34, 44-45, 70-71, 133.)

Instead, Nationstar argues that the amount paid was not the full amount due because the Loan Modification Agreement was not enforceable. Once again, the Court points to its previous

analysis in this regard and rejects Nationstar's argument.   Accordingly, the Court **DENIES**
Nationstar's motion to dismiss Binns' claim under the Uniform Commercial Code.

**E.**      <u>**Good Faith and Fair Dealing Claim**</u>

Finally, Nationstar objects to the Magistrate Judge's conclusion that Binns' Good Faith
and Fair Dealing claim should remain pending.   Specifically, Nationstar argues that the claim is
barred by Indiana's economic loss rule, which prevents recovery in negligence cases involving
pure economic loss.   In addition, Nationstar argues that the Magistrate Judge erred in concluding
that an escrow account creates a fiduciary relationship and that Binns has sufficiently pled an
escrow account violation.

**1.**      <u>**Indiana's Economic Loss Rule is Not Applicable to Binns' Claim**</u>

Indiana's economic loss rule provides that "a defendant is not liable under a tort theory for
any purely economic loss caused by its negligence".   *Indianapolis-Marion Cnty. Pub. Library v.
Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010) ("[t]he economic loss rule reflects
that the resolution of liability for purely economic loss caused by negligence is more appropriately
determined by commercial rather than tort law.").   A plaintiff suffers "purely economic loss" when
he suffers only "pecuniary loss unaccompanied by any property damage or personal injury." *Id.*
at 730.   Thus, as a general rule, a plaintiff who suffers no property damage or personal injury
cannot recover in tort.   *Id.* at 729-30 (quoting *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th
Cir. 1990) ("tort law is a superfluous and inapt tool for resolving purely commercial disputes.   We
have a body of law designed for such disputes.   It is called contract law.").

This rule has several limitations.   *Id.* at 730.   First, it applies only where a plaintiff has
suffered "purely economic loss." *Id.*   Thus, property damage or personal injury which is distinct
from economic loss precludes application of the rule.   *Id.*   Second, the rule does not apply in certain

situations where a plaintiff has suffered exclusively economic loss, including "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." *Id.* at 742.

In her complaint, Binns alleges that she "has incurred and suffered through significant emotional distress as a result of Nationstar's wrongful collection actions and foreclosure lawsuit." (Filing No. 1 at ¶ 87.)  In addition, she alleges that she "is currently fighting with debilitating depression and severe weight loss as a direct result of Nationstar's actions," and that she has "acquired medical assistance to tackle the aforementioned health problems." *Id.*  Binns argues that these allegations demonstrate a "personal injury" sufficient to circumvent the economic loss rule. (Filing No. 36 at 3.)

In its motion to dismiss, Nationstar argues that Binns' alleged harm does not amount to "personal injury" for purposes of the economic loss rule.  Specifically, Nationstar cites *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, wherein the court distinguished between "intangible" and "physical harm" and defined the latter as "bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property." 665 N.E.2d 933, 936, 938-39 (Ind. App. 1996) ("when there is no accident and no physical harm so that the only loss is pecuniary in nature, courts have denied recovery under the rule that purely economic interests are not entitled to protection against mere negligence."). Nationstar additionally cites *Stender v. BAC Home Loans Servicing LP*, wherein injuries to plaintiffs' credit scores and reputations were considered intangible harms, such that plaintiffs' tort claims were barred by the economic loss rule.  No. 2:12-CV-41, 2013 WL 832416, at *4 (N.D. Ind. Mar. 6, 2013).

In his Report and Recommendation, the Magistrate Judge interpreted *Bamberger* as "not establish[ing] the outer bounds of what might constitute a personal injury".  (Filing No. 55 at 7-8.)

In addition, the Magistrate Judge concluded that Binns' alleged harm to her mental health, which allegedly affected her body, went beyond the harms alleged in either *Bamberger* (interrupted electrical power to a building resulting in the temporary inability to practice law) or *Stender* (lost credit score and reputation).  *Id.* at 8-9.  As a result, the Magistrate Judge concluded that Binns' mental health harms amounted to a personal injury, sufficient to circumvent the economic loss rule.

> As indicated by her pursuit of medical assistance, Binns currently fears for her physical health and safety. . . . Her harms thus go beyond merely economic harms. She is not suing only because Nationstar and Ocwen did not "perform as expected;" rather, she has suffered physical distress above and beyond her economic loss, such that seeking recovery in tort is appropriate.

*Id.*

What appears lost in the parties' arguments and the analysis, however, is the fact that every case used to explain and apply the economic loss rule in either the parties' briefs or in the Report and Recommendation, involved a *negligence* claim.  *See, e.g.*, *Stender*, 2013 WL 832416, at *4 ("claiming the defendants negligently failed to comply with the terms of the loan modification agreements"); *Indianapolis-Marion Cnty. Pub. Library*, 929 N.E.2d at 726 ("alleging negligent failure to perform engineering, administrative, and design work in a skillful, careful, workmanlike manner"); *Bamberger*, 665 N.E.2d at 935 ("recovering economic losses arising from an electrical power outage under a negligence theory").  *See also Runde v. Vigus Realty Inc.*, 617 N.E.2d 572, 574 (Ind. App. 1993) ("[a]n examination of the Plaintiff's Amended Complaint clearly discloses that the theory of the Plaintiffs' action is negligence"); *Selman v. CitiMortgage, Inc.*, 2013 WL 838193, *5 (S.D. Ala. Mar. 5, 2013) ("common-law negligence and wantonness claims" against a mortgage servicing lender).

16

In striking contrast, Binns' Duty of Good Faith and Fair Dealing claim is not akin to a negligence claim but, instead, arises under contract law.  Indeed, the parties agree, (Filing No. 21 at 17; Filing No. 36 at 11), that the Duty of Good Faith and Fair Dealing is "an implied covenant that only arises in insurance and employment *contracts* or where *contracts* are ambiguous as to the application of the covenants or expressly impose them".  *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. App. 2011) (emphasis added).  *See also Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. App. 2008) (noting that the covenant arises under contract law and is not extended to other types of unambiguous contracts); *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990); *Selman*, 2013 WL 838193, at *5 (noting that a mortgage servicing agreement is a "creature of contract, not of tort, and stem[s] from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public"); *Galayda v. Wachovia Mortg., FSB*, No. 10-1065 (FLW), 2010 WL 5392743, **15-16 (D.N.J. 2010) ("[i]t is axiomatic that a claim for the breach of the covenant of good faith and fair dealing arises out of the contract itself").

Nationstar presents no authority to suggest that the economic loss rule extends beyond negligence claims or that the economic loss rule specifically applies to bar a Duty of Good Faith and Fair Dealing claim.  Instead, the Court notes that Indiana courts have been reluctant to expand the economic loss rule beyond negligence claims.  *See, e.g.*, *Runde v. Vigus Realty Inc.*, 617 N.E.2d 572, 574-75 (Ind. App. 1993) (declining to extend the economic loss rule to a *negligence* claim against a gratuitous agent); *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 636 (7th Cir. 2001) ("Indiana courts have specifically explained that the [economic loss] rule does not apply outside the product failure context.").

Accordingly, in the absence of authority to support Nationstar's argument that the economic loss rule has specific applicability to  Binns' Good Faith and Fair Dealing claim, the Court considers the argument to be undeveloped and, therefore, waived.  *See United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("[u]nsupported and undeveloped arguments . . . are considered waived"); *Curtis v. Earnest Mach. Prods*. Co., No. 1:11-CV-951, 2012 WL 5879439, at *4 (S.D. Ind. 2012).  As a result, the Court concludes that Indiana's economic loss theory is not applicable to Binns' Breach of the Duty of Good Faith and Fair Dealing claim.

### 2.      Binns' Duty of Good Faith and Fair Dealing Claim is Insufficiently Pled

Both the parties in their briefs and the Magistrate Judge in his Report and Recommendation, spend a significant amount of time discussing whether Binns sufficiently pled a fiduciary relationship, sufficient to establish her Duty of Good Faith and Fair Dealing claim. Similarly problematic, however, is the absence of any legal authority to suggest that the claim arises in fiduciary relationships at all.

Prefacing his analysis of Binns' Duty of Good Faith and Fair Dealing claim, the Magistrate Judge began by noting the parties' agreement that the duty only arises in limited contractual circumstances.  (*See* Filing No. 55 at 35.)  However, the parties' briefs misquote *Coates* when they list "fiduciary relationships" as one of the limited contractual circumstances where the duty of good faith and fair dealing might arise.  A closer look at the case cited by both parties reveals that "fiduciary relationships" is not listed as one of the limited contractual circumstances wherein Indiana courts have recognized a Duty of Good Faith and Fair Dealing claim.  Rather, the case, *Coates v. Heat Wagons, Inc.*, states  "[i]n Indiana law, implied covenants of good faith and fair dealing apply only to insurance and employment contracts or where contracts are ambiguous as to the application of the covenants or expressly impose them."  942 N.E.2d 905, 918 (Ind. App. 2011).

18

*See also Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. App. 2008) (reciting the same limited list of circumstances wherein the duty arises and noting that the Indiana courts have not extended the covenant to other types of unambiguous contracts); *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind. 1990) ([i]t is only where the intentions of the parties cannot be readily ascertained because of ambiguity or inconsistency in the terms of a contract . . . that a court may have to presume the parties were acting reasonably and in good faith in entering into the contract.").

Consequently, in the absence of authority to support the parties' assertion that the duty of good faith and fair dealing arises under fiduciary relationships, the Court can only conclude that it does not.  As a result, the Court **GRANTS** Nationstar's motion to dismiss Binns' Good Faith and Fair Dealing claim.

Further, the Court concludes that dismissal of the claim should be with prejudice.  Fed. R. Civ. P. 15 directs that courts should "freely" grant leave to amend a pleading "when justice so requires".  Fed. R. Civ. P. 15(a)(2).  Nevertheless, courts are instructed to deny leave to amend for such reasons as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of [the] amendment."  *Airborne Beepers & Video, Inc. v. A T & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007).

Binns' case clearly does not involve either an employment contract or an insurance contract.  In addition, Binns cannot plead that the contract is ambiguous without "pleading herself out of court".  Indeed, Binns' entire case is built upon her contentions that she had an unambiguous and enforceable Loan Modification Agreement; that she made timely payments in accordance with

the express terms of the Loan Modification Agreement; and that Nationstar wrongly refused to recognize the Loan Modification Agreement as executed.  (*See* Filing No. 62 at 8.)

Therefore, because Binns cannot demonstrate that her contractual situation falls into one of the narrow circumstances identified by the parties in *Coates*, it appears that Binns cannot cure her pleading deficiency through an amendment.  As a result, affording Binns leave to refile her Duty of Good Faith and Fair Dealing claim would be futile.  *See Airborne Beepers & Video, Inc.*, 499 F.3d at 666.  Consequently, the Court considers it appropriate to **DISMISS WITH PREJDUICE** Binns' Duty of Good Faith and Fair Dealing claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Nationstar's Objection.  (Filing No. 56.)

The Court **ADOPTS** The Magistrate Judge's recommendation that all of Binns' claims against Ocwen be dismissed, and the Court **DISMISSES WITH PREJUDICE** all of Binns' claims against Ocwen.  Consequently, because no claims remain pending, Ocwen is **DISMISSED** as a defendant in this case.

Noting no objection from Binns, the Court also **ADOPTS** The Magistrate Judge's dismissal recommendation for the following claims against Nationstar:  intrusion upon seclusion, fraudulent misrepresentation, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, wrongful interference with contractual relations, and negligence *per se*, and the Court **DISMISSES WITH PREJUDICE** those claims against Nationstar.

The Court also **ADOPTS** the Magistrate Judge's recommendation that Binns' claim against Nationstar under the Fair Debt Collection Practices Act should remain pending, as Nationstar did not move to dismiss that claim.

In addition, for the reasons stated in the Magistrate Judge's Report and Recommendation and in this Order, the Court **ADOPTS** the Magistrate Judge's recommendation that the Indiana Home Loan Practices Act claim, Indiana Crime Victim's Relief Act claim, and the Uniform Commercial Code claims against Nationstar remain pending.

The Court **MODIFIES** the Report and Recommendation with respect to Binns' Duty of Good Faith and Fair Dealing claim, as stated in this Order.  Consequently, the Court **DISMISSES WITH PREJUDICE** Binns' Duty of Good Faith and Fair Dealing claim.

Final judgment on the dismissed claims will issue at a later time.

**SO ORDERED.**

Date: 9/30/2015

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lucius James Wallace
HUMPHREYS WALLACE HUMPHREYS PC
luke@hwh-law.com

Robert David Humphreys
HUMPHREYS WALLACE HUMPHREYS PC
david@hwh-law.com

Chase M. Haller
NEIGHBORHOOD CHRISTIAN LEGAL CLINIC
challer@nclegalclinic.org

Jessica Lauren Pixler
ROTHBERG LOGAN & WARSCO LLP
jpixler@rlwlawfirm.com

Susan Elizabeth Trent
ROTHBERG LOGAN & WARSCO LLP
strent@rlwlawfirm.com

Mark W. Baeverstad
ROTHBERG, LOGAN & WARSCO LLP
mbaeverstad@rlwlawfirm.com

Thomas B. Trent
ROTHBERG, LOGAN & WARSCO LLP
ttrent@rlwlawfirm.com

Syed Ali Saeed
SAEED & LITTLE LLP
ali@sllawfirm.com

Zachary Myers VanVactor
STITES & HARBISON PLLC-Louisville
zvanvactor@stites.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com